[No. 7842-6-III. Division Three. November 12, 1987.]

AMERICAN STATES INSURANCE COMPANY, ET AL, *Respondents*, v. BRADLEY LANCE BREESNEE, ET AL, *Defendants*, UNIGARD INSURANCE COMPANY, *Appellant*.

*Jerome Leveque* and *Evans, Craven & Lackie,* for appellant.

*Michael Geraghty* and *Turner, Stoeve, Gagliardi & Goss,* for respondents.

McInturff, C.J.—Unigard Insurance appeals an order on summary judgment that Lance Breesnee was not covered under either of two garage policies issued by American States Insurance Company to his father and by American Economy Insurance Company to his brother. We affirm.

James Breesnee, Sr., and his son, James Breesnee, Jr., own and operate separate car lots for which they were insured under separate garage policies issued by American States and American Economy insurance companies (insurers) through agent Mike Mitchell. The garage policies covered the insureds for liability (1) arising out of their use of any automobile, (2) for their giving permission to use any automobile, and (3) for garage operations. The premiums for these garage policies were fixed by annual audits and were based, in part, on the number of employees reported and the value of the insureds' automobile inventories.

In August 1984, Lance Breesnee, the 17–year–old son of James Breesnee, Sr., purchased a 1978 Pontiac Trans–Am, with title in his name. Old National Bank financed the car

and James Breesnee, Jr., and his wife cosigned on the loan for his brother. James Breesnee, Jr., in his affidavit, states:

> Mike Mitchell's office was notified on August 3, 1984 by someone in our car business office that we wanted the Pontiac covered for insurance purposes, and that Old National Bank needed to be notified of the insurance coverage.

James Breesnee, Sr., attests:

> Mike Mitchell's office was notified on August 3, 1984 by Tracy Breesnee, who works in our car business office, that I wanted the Pontiac covered for insurance purposes, and the Old National Bank which was financing the car needed to be notified of the coverage.

According to Mr. Mitchell, Mr. Breesnee, Sr., asked him to add the vehicle and send a certificate of insurance to Old National Bank. While the garage policy already covered Mr. Breesnee, Sr., for any vehicle, Mr. Mitchell stated it was not unusual for him to receive a request to add a specific vehicle. Dealers regularly make these requests because the banks who finance their purchases want assurances of coverage on the vehicles they are financing. Mr. Mitchell sent a certificate of insurance to Old National Bank describing the Trans–Am as a "floored vehicle." No document was sent to either Mr. Breesnee, Sr., or Mr. Breesnee, Jr., to confirm insurance. The 1985 premium audit did not list Lance as an employee or show any change in inventory to include the Trans–Am.

Lance used the car for his own personal needs, and while working for his brother, Mr. Breesnee, Jr. On June 30, 1985, while returning from a trip unrelated to either his brother's or his father's businesses, he was involved in an accident. He was injured, as were passengers in his car, and in the car with which he collided. Mr. Breesnee, Sr., notified Mr. Mitchell of the accident the next day.

In his deposition, Mr. Mitchell said he discovered the Trans–Am was *not* in Mr. Breesnee, Sr.'s, name or in the dealership's name for the first time the day after the accident. It was his impression that Mr. Breesnee, Sr., also was

surprised at this fact. However, Mr. Mitchell stated he told the Breesnees he would submit the claim under both policies because he "wasn't sure" about coverage where Lance was under 18 and had been working for his brother. Mr. Breesnee, Sr., attests that "[a]fter the accident I was told by Mike Mitchell that he thought there was coverage for any liability arising out of the accident."

In August 1985 the insurers brought this complaint for declaratory judgment, naming as defendants the Breesnees, the persons injured in the accident, and Unigard Insurance, the uninsured motorist carrier for the parties injured in the vehicle which Lance Breesnee hit. The complaint alleged Lance was not an insured under either his father's or his brother's policies, that the Trans–Am was not a covered automobile under either policy, and that the damages did not result from garage operations. Thus, the insurers asked the court to declare that the policies did not provide coverage for claims arising out of the accident and they had no duty to defend.

In March 1986 the Breesnees filed a motion for summary judgment, and the insurers brought a counter motion against them for the same. The court denied the Breesnees' motion and granted partial summary judgment to the insurers. Specifically, the court held the policies covered Mr. Breesnee, Sr., and Mr. Breesnee, Jr., for the accident, but did not cover the Trans–Am or Lance Breesnee. Unigard moved for reconsideration on the ground that the intent of the parties at the time of the request for coverage on the Trans–Am modified the policies and on the ground that the insurers were estopped from denying coverage. The court denied the motion because Unigard was not a party to the contractual agreement between the insurers and the Breesnees and, therefore, lacked standing. Unigard appeals.

First, did Unigard have standing to seek reconsideration of the superior court order? One whose interests are affected by a declaratory judgment action has standing and is entitled to be heard. *Safeco Ins. Co. v. Dairyland Mut. Ins. Co.*, 74 Wn.2d 669, 671, 446 P.2d 568 (1968). Unigard,

as the uninsured motorist carrier, has an interest affected by this action. However, since the appellate court, in reviewing motions for summary judgment, engages in the same inquiry as the trial court, *Sarruf v. Miller,* 90 Wn.2d 880, 883, 586 P.2d 466 (1978), it is not necessary for us to remand the cause in order to consider the issues raised by Unigard.

Second, does a genuine issue of material fact exist as to whether either of the policies covered the June 30, 1985 accident? Unigard contends the intent of the Breesnees and agent Mike Mitchell was that coverage be provided for the Trans–Am, and the Breesnees paid premiums for this coverage. According to Unigard, Lance also qualifies as a permissive user under the terms of the policies. Finally, Unigard argues Mr. Mitchell should have inquired into the scope of coverage desired and his failure to do so estopped him and the insurers from denying coverage later. We are not persuaded by Unigard's contentions.

## A
### INTENT

"A contract of insurance should be given a fair, reasonable, and sensible construction, consonant with the apparent object and intent of the parties . . ." *Morgan v. Prudential Ins. Co. of Am.,* 86 Wn.2d 432, 434, 545 P.2d 1193 (1976); *Morrison v. Anchor Cas. Co.,* 53 Wn.2d 707, 709, 336 P.2d 869 (1959). The burden of proving a contract is on the party asserting it, and he must prove each essential fact, including the existence of a mutual intention. *Johnson v. Nasi,* 50 Wn.2d 87, 91, 309 P.2d 380 (1957). Washington adheres to the objective manifestation theory of contracts, which imputes to a person an intention corresponding to the reasonable meaning of his words and acts. *Dwelley v. Chesterfield,* 88 Wn.2d 331, 335, 560 P.2d 353 (1977). The unexpressed intention of one party is meaningless as to the mutual intention of the parties. *Dwelley.*

This record does not reflect that the parties mutually intended to cover Lance Breesnee's use of his vehicle for his

personal purposes. Even under the set of facts proffered by the Breesnees in their affidavits, Mr. Mitchell reasonably could have assumed that the Trans–Am was a vehicle newly purchased by the business, and that the bank which financed the purchase merely wanted proof of insurance. Specifically, the Breesnees stated the request for coverage for the Trans–Am was made by telephone by a business employee of the Breesnees to an employee of Mr. Mitchell, the agent who had procured the garage policies, and Lance was not mentioned during this conversation. Thus, no modification of the terms of the policies occurred which would afford Lance coverage.

## B
### PAYMENT OF PREMIUM

The Breesnees rely on *General Motors Acceptance Corp. v. Grange Ins. Ass'n,* 38 Wn. App. 6, 684 P.2d 744, *review denied,* 102 Wn.2d 1015 (1984). There, a son had been insured under his father's automobile liability policy. In 1978, a pickup was added to the policy, and the insurance premiums were increased. Both father and son were listed as registered owners on the application for the change in insurance, but, in fact, title to the pickup was in the son's name only. In 1979, the son traded the pickup for a Trans–Am and a few hours later was involved in a serious accident. The insurer argued at pages 11–12 that since title to the pickup was in the son's name only, the pickup was not insured under the policy, and, therefore, coverage did not extend to the Trans–Am as a newly acquired automobile under the policy.

This court rejected the foregoing argument, relying, in part, on earlier cases which held that an insurer who claims the policy was never effected due to the insured's fraud or misrepresentation must tender back the premium as a condition precedent to this defense. *General Motors,* at 12 (citing, *inter alia, Glandon v. Searle,* 68 Wn.2d 199, 204, 412 P.2d 116 (1966)). The garage policies here, like most such policies, *see Morrison,* 53 Wn.2d at 709, did not list

specific automobiles, nor was any premium charged for the Trans–Am. The Breesnees received the coverage they paid for, unlike the insured in *General Motors,* who paid for insurance on a vehicle which the insurance company later alleged was not eligible for coverage.

## C
### PERMISSIVE USER

 Unigard cites the policy language that "[a]nyone else is an insured while using with [the named insured's] permission a covered auto . . ."[1] However,

> [T]he term "permission", as used in connection with the usual or standard omnibus clause in an automobile liability policy, while having a somewhat flexible meaning, ordinarily connotes a right or power on the part of the insured to grant, withhold or control the privilege of use by the user of the subject vehicle. It follows then, that if one's use and operation of an automobile is to be within the meaning of an omnibus clause, which requires the permission of the insured, the insured must ordinarily have such an ownership interest in the vehicle *as entitles him to possession and control thereof* and thus to be in a position to give the required permission.

(Italics ours.) *Beatty v. Western Pac. Ins. Co.,* 74 Wn.2d 530, 539, 445 P.2d 325 (1968). We recognize that strict ownership of the vehicle may not be necessary for one to grant permission to use, as in the case of vehicles owned by third parties which are being repaired in the insured's shop. But here, Mr. Breesnee, Sr., and Mr. Breesnee, Jr., had no authority by virtue of ownership or otherwise over the Trans–Am. Thus, they could not grant permission to Lance to use it.

## D
### ESTOPPEL

Unigard asserts that under the circumstances the insurers are equitably estopped to deny coverage. That is, by issuing a certificate of insurance to the bank, the insurers

---

[1]Under the policies, "any auto" is a covered auto.

represented that the Trans–Am was insured, and the Breesnees relied to their detriment on this representation. Unigard also argues promissory estoppel applies. According to Unigard, Mr. Mitchell's conduct amounted to an implied promise to provide insurance coverage for the Trans–Am. Unigard's argument in support of both theories is that Mr. Mitchell had some duty to make further inquiries of the person who placed the insurance order to determine the nature and scope of the insurance required.

"It is clear . . . that the insured has the duty to instruct his agent." (Footnote omitted.) 3 R. Anderson, *Couch on Insurance* § 25:34, at 333 (2d ed. 1984). "[H]is instructions [must be] clear, explicit, and positive, and if they are ambiguous or obscure, and will bear different interpretations, the agent is justified in acting in good faith upon one of two reasonable constructions . . ." 3 R. Anderson § 25:35, at 334.

In *Manzer v. Pentico,* 209 Neb. 364, 307 N.W.2d 812, 813 (1981), plaintiff's action against his agent for his alleged failure to cover plaintiff's custom farming operations was dismissed on the agent's motion for summary judgment. The evidence was undisputed that the agent was never directly informed of plaintiff's custom farming operations and that the agent never told the plaintiff that such operations were covered under his farm liability policy. The plaintiff could not remember requesting the agent to provide such coverage. In upholding the summary judgment, the court relied on the rule that it is the duty of the insured to advise the agent as to the insurance he wants.

As discussed under the heading "Intent", the Breesnees' request for coverage for the Trans–Am and the circumstances surrounding that request did not advise Mr. Mitchell that insurance was needed for a vehicle owned and operated by a person unrelated to the Breesnees' businesses. We agree with *Manzer* and hold the Breesnees had the duty of clearly instructing Mr. Mitchell. Having failed that duty, they cannot now rely on Mr. Mitchell's representation of coverage, since his representation was based on

a misunderstanding for which they bear the responsibility. Neither equitable nor promissory estoppel applies.

The judgment of the Superior Court is affirmed.

MUNSON and THOMPSON, JJ., concur.