[No. 2260-3.   Division Three.   May 31, 1978.]

*In the Matter of the Marriage of* JACQUELINE L. JACOBS,
*Respondent, and* HARVEY A. JACOBS,
*Appellant.*

*Delay, Curran & Boling* and *Michael J. Pontarolo,* for appellant.

*Wolff & Eberle, C. Raymond Eberle,* and *Donald A. Anderson,* for respondent (counsel for appeal only).

Munson, C.J.—In an appeal from a dissolution decree, Harvey Jacobs, a major in the United States Air Force, contests the trial court's recognition of his wife's community interest in his unmatured military pension as violative of the federal supremacy clause, article 6, United States Constitution. Jacqueline Jacobs cross–appeals contending the award of child support is inadequate, the father's visitation rights are excessive, that the classification of the military pension into separate and community interests is in error, and the lump–sum award of $10,000 is inadequate. We reverse for recomputation of the community interest in the unmatured retirement benefits.

The parties were married in Spokane in 1964, and had one child; respondent had another child by a prior marriage. Major Jacobs, who has been a member of the United States Air Force continuously since 1960, will be eligible for retirement and accompanying benefits, which will be approximately one–half his present salary, if he completes 20 years of service. 10 U.S.C. §§ 8911, 8991 (1959). His base pay at the time of trial was $1,500.

Major Jacobs contends that the court erred in even considering the separate and community interest of his unmatured military pension. The courts have answered that contention to the contrary. *Wilder v. Wilder,* 85 Wn.2d 364, 534 P.2d 1355 (1975); *Payne v. Payne,* 82 Wn.2d 573, 512 P.2d 736 (1973); *Morris v. Morris,* 69 Wn.2d 506, 419 P.2d 129 (1966); *DeRevere v. DeRevere,* 5

Wn. App. 741, 491 P.2d 249 (1971). The statement of the Supreme Court in *Wilder v. Wilder, supra* at 367, "that a military pension is community property to the extent that community funds[1] have been invested in it and that it is before the court for consideration in a dissolution proceeding", is not an aberration peculiar to Washington. *See Van Loan v. Van Loan,* 116 Ariz. 272, 569 P.2d 214 (1977); *In re Marriage of Brown,* 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 633 (1976), as applied to a military pension in *In re Marriage of Frieberg,* 57 Cal. App. 3d 304, 127 Cal. Rptr. 792 (1976), on remand by the Supreme Court of California; *Ramsey v. Ramsey,* 96 Idaho 672, 535 P.2d 53 (1975); *LeClert v. LeClert,* 80 N.M. 235, 453 P.2d 755 (1976); *Cearley v. Cearley,* 544 S.W.2d 661 (Tex. 1976).[2]

Furthermore, in *In re Marriage of Fithian,* 10 Cal. 3d 592, 517 P.2d 449, 111 Cal. Rptr. 369 (1974), *cert. denied,* 419 U.S. 825, 42 L. Ed. 2d 48, 95 S. Ct. 41 (1974), the court noted that Congress gave no indication that it intended to classify military retirement pay as either separate or community property nor that treating such pay as community property circumvents any congressional scheme. *Cf. In re Marriage of Pardee,* 408 F. Supp. 666, 669 (C.D. Cal. 1976), which further noted that there was no federal intent to control the distribution of federal assets in a divorce or separation proceeding which had historically been within the authority of state courts.[3]

---

[1]At this time, people in the military services do not contribute financially to a retirement plan. However, retirement benefits are in the nature of deferred compensation which accrues during marriage and to that extent is community property.

[2]However, a military *disability* pension received before the maturing of a retirement pension has been held to be a separate property. *In re Marriage of Jones,* 13 Cal. 3d 457, 531 P.2d 420, 119 Cal. Rptr. 108 (1975).

[3]For commentaries on the subject of military pensions and community property, including distribution formulas, see:

(a) *Community Property—Deferred Compensation: Disposition of Military Retirement Pay upon Dissolution—Payne v. Payne,* 82 Wn.2d 573, 512 P.2d 736 (1973), 50 Wash. L. Rev. 505 (1975).

Both parties contend the wife's award of $10,000 ($4,000 in a lump-sum payment and the balance at $150 per month at 8 percent interest), as to her community share of the retirement benefits, was in error. The husband contends that if an award is to be made, it should not begin until either he is eligible for or actually collects retirement pay; the wife contends the award is inadequate.

As to the husband's contention, unmatured retirement benefits were considered in *Wilder* and *DeRevere;* the matter was resolved in favor of the trial court's exercising its discretion in making a distribution. *In re Marriage of Pea,* 17 Wn. App. 728, 566 P.2d 212 (1977), held that the award there was grossly unequal and modified that portion of the decree.

Here, the trial court found that of the 11 years of marriage, the parties had resided for 5 years in community property states and 6 years in separate property states. Thus, the court held that the community interest in the military pension was 5/16 or 31 percent as of the date the husband was eligible to retire. Since the pension was to be 50 percent of the husband's base pay, he would be eligible for a pension benefit of $750 per month. His life expectancy at that time, according to the insurance commissioner's mortality tables, was 32.18 years. (RCW 48.02.160). The court concluded, considering that the income would also be

(b) *Pension Rights and Community: from French to Brown,* 4 Western State U.L. Rev. 91 (Fall 1976).

(c) *How Community Property Laws Affect Employee Benefit Plans,* 3 Community Property J. 3 (Winter 1976).

(d) *Apportionment of Community Property Interest in Prospective Military Retirement Benefit upon Divorce,* 9 St. Mary's L.J. 72 (1977).

(e) *Community Property—Military Retirement Benefits,* 9 St. Mary's L.J..135 (1977).

(f) *In re Marriage of Brown: At Least an Equal Division of Pension Rights,* 9 Sw. U. L. Rev. 671 (1977).

(g) *Dissolution of Marriage—Community Property—Retirement Benefits et seq.,* 17 Santa Clara L. Rev. 734 (1977).

(h) *Toward a More Equitable Distribution of Pension Benefits,* 3 So. U.L. Rev. 51 (1977).

(i) *Military Retirement Benefits: Community Property as Earned During Marriage,* 14 Huston L. Rev. 925 (1977).

taxable, that each party's community share was $18,000 and that each party would be entitled to $100 per month. No evidence of present value was presented by either party; thus, the court made its own computations. The court also considered the length of the marriage, the parties' respective abilities, as well as their age and health. In addition, the court took into account the condition in which the parties would be left after dissolution: the wife's custody of the two minor children; the husband's support obligation; his responsibility for the existing community debts; and the amount he had paid his wife during separation. The court therefore modified the award to the wife to $10,000 in lieu of her pension interest.

The question of domicile, as affecting the characterization of military pension benefits, is an intriguing one which we do not reach in this case.[4]

■ Here, the parties were married in Washington and resided here for the next 2 years; the wife retained the residence of her husband's sister and brother–in–law as her legal residence. She testified her husband's legal residence was always Spokane; he voted absentee continually while outside Washington state, and always maintained a current Washington driver's license. This testimony is undisputed. Mrs. Jacobs returned to Spokane when the parties separated; Major Jacobs stayed in Texas, where he was stationed in the Air Force.

[T]he burden of proof is upon the one asserting his change of domicile. . . .

The domicile, once established, continues until it is superseded by a new domicile.

---

[4]However, both California and Arizona have statutes which in effect state that property acquired by either spouse outside the state shall be deemed community property if it would have been community property had it been acquired within the state. *See* California Civil Code § 140.5 as discussed in *Addison v. Addison,* 62 Cal. 2d 558, 399 P.2d 897, 43 Cal. Rptr. 97, 99 (1965), relating specifically to dissolution or separation proceedings; and A.R.S. § 25–318 discussed in *Woodward v. Woodward,* 117 Ariz. 148, 571 P.2d 294 (Ct. App. 1977). These statutes seem to resolve the issue. Washington has no such legislation.

*Sasse v. Sasse,* 41 Wn.2d 363, 366, 249 P.2d 380 (1952). Here, the evidence indicates a Washington domicile. The trial court looked at the various residences occasioned by change of duty stations and characterized the nature of the military pension as separate or community on that basis. That alone is insufficient. The community domicile was always Washington; on that basis, the military pension was community property. Therefore, the value of the parties' community interests should have been computed on the basis of 11/16ths, rather than 5/16ths. This case must be remanded for reconsideration of the wife's community interest in that pension.

▇ The husband contends that for the trial court to place a lump–sum value on a pension, which would be payable prior to his receiving the benefit, is a manifest abuse of discretion. We disagree. *Wilder v. Wilder, supra; DeRevere v. DeRevere, supra.* There is no one method of making the distribution. *See* 50 Wash. L. Rev. 529 *et seq.* (1975); 9 St. Mary's L.J. at 84 *et seq.* (1977); 3 So. U.L. Rev. at 59 *et seq.* (1977). The court on remand may want to consider, in addition to the factors it initially considered, those mentioned in *Wilder* and *DeRevere.* Furthermore, inasmuch as the court ordered installment payments, it may want to consider whether these installments would continue in the event Major Jacobs' right to the pension terminated either before or after the pension matured; whether the balance would be chargeable against Major Jacobs' estate should he die before the final installment was paid; and what the effect would be if Major Jacobs abandoned the pension right before it matured. But the court did not err in adopting a lump–sum award with payment over a period of time.

Jacqueline Jacobs in her cross appeal contends that the trial court's award of child support was inadequate and that the court abused its discretion by awarding the father visitation for 6 weeks each summer. Both of these assignments of error are not well taken.

Appendix A of respondent's brief is a copy of Spokane County Superior Court's guidelines for child support, computed upon the noncustodial parent's net monthly income. It suggests that a noncustodial parent with a net income of $1,500 per month should pay $360 per month child support. Here, the trial court awarded $300 per month and required the father to maintain the child's eligibility for medical benefits through the federal government. We find no abuse of discretion. *Hume v. Hume,* 74 Wn.2d 319, 444 P.2d 804 (1968).

Likewise, the court's award of a 6–week visitation during the summer was not an abuse of discretion. Major Jacobs presently resides in Texas; the cost of travel borne by the father would make more numerous but shorter visitations economically prohibitive. Mrs. Jacobs' two sons are of sufficient age that a separation of 6 weeks should have no detrimental effect upon them. We find no abuse of discretion.

That portion of the decree establishing the wife's community interest in the husband's retirement benefits is reversed and remanded for reconsideration, the balance of the decree is affirmed.

GREEN and McINTURFF, JJ., concur.