27 P.3d 656 (2001)
In re the MARRIAGE OF Theresa Joanne HARRIS, Respondent, and
Perry Allen Harris, Appellant.
No. 45364-5-I.
Court of Appeals of Washington, Division 1.
July 30, 2001.
*657 Molly M. McPherson, Coupeville, for appellant.
Mark David Theune, Cohen, Manni & Theune, Oak Harbor, for respondent.

PUBLISHED IN PART
KENNEDY, J.
Perry Harris appeals the trial court's division of Theresa Harris's military pension benefits in the decree dissolving the parties' marriage. The court ordered Theresa to commence making monthly payments to Perry for his share of the community interest in the pension when she first became eligible for retirement after 20 years of active service, although she had no intention of retiring that soon. Perry argues that the trial court erred when it declined to require Theresa to increase her monthly payments some 2 years laterat the earliest date she could retire at an officer's base pay grade although she had no intention of retiring at that time either and to increase them again at the date of her actual retirement to reflect his share of the community interest in the pension as measured against her total years of military service and her final officer's pay grade. But Perry was not required to share the risks that are inherent in deferred receipt of income. Moreover, Perry does not propose to credit the marital community with the payments he will receive between Theresa's earliest possible retirement date and the date of her actual retirement, and such credit would be required if Perry were not to enjoy a windfall at Theresa's expense. Finally, Perry failed to provide the trial court with actuarial evidence by which to measure the present value of the future stream of income that he will receive commencing with Theresa's earliest possible retirement date, as compared to the present value of what he would receive if he were required to wait until the pension reaches pay status before enjoying any of its benefits. For all these reasons, we find no abuse of discretion and affirm the trial court's distribution of the military pension.[1]

*658 FACTS
Theresa Harris and Perry Harris were married on March 27, 1982 and separated on October 5, 1998. The decree dissolving their marriage was entered on September 10, 1999. At the time of trial, Theresa was 37 years old, and Perry was 41 years old.
Theresa Harris has been in active service in the Navy since July 22, 1980. At the time of trial, Theresa held the rank of Lieutenant, a commission she received in June 1992. Her monthly base pay at the time of trial was $4,008 at "O-3E." Under federal law, she was first eligible to retire in July 2000 at the monthly base pay grade of "E-6" ($2,172.60) for 20 years of active service, making her eligible to receive $1,086.30 per month in retired pay. She will not be eligible to retire at the monthly base pay grade of "O-3E" until June 2002, at which point she will have served 10 years as an officer and could receive $2,004 in monthly retired pay.[2] Theresa testified that she intends to retire after serving 30 years, by which point she hopes to have reached the rank of Captain so that she would retire at the base pay grade of "O 6" ($5,834.40) and could receive $2,917.20 in monthly retired pay.
From the date of the parties' marriage to the date of their separation was 198 months. Accordingly, as of the earliest date that Theresa could retire and receive a military pension (240 months of active service) the marital community owned 82.5% of the pension. Perry had served as the primary homemaker spouse during a substantial part of the marriage and was unemployed at the time of trial. Both parties proposed that Perry begin receiving his proportionate share of the pension at the earliest date that Theresa could commence drawing pension payments if she were to retire, that is, on August 1, 2000. The parties agreed that Perry's share of the community portion of the pension would be set at 41.4% and that Theresa would commence making monthly payments to Terry in the amount of $450 per month commencing August 1, 2000, whether or not she retired after 20 years of active service.[3]
The court rejected Perry's request to be awarded step increases in his monthly payments in the sum of 41.4% of the total monthly pension Theresa could receive after serving 10 years as an officer, and 41.4% of the total monthly pension at the time of her actual retirement. This appeal followed.

DISCUSSION
Perry argues that the court erred in calculating the monthly pension amount solely by referencing the time Theresa was first eligible to retire rather than providing him with step increases at the time that she could retire as an officer and again at the time she actually retires. Perry maintains that since Theresa intends to retire as an officer, he is entitled to share in the higher pension because Theresa first became an officer while the two were still married.
The trial court has broad discretion in awarding property in a dissolution action, and will be reversed only upon a showing of manifest abuse of discretion. Stachofsky v. Stachofsky, 90 Wash.App. 135, 951 P.2d 346 (1998). A court abuses its discretion if its decision is based on untenable grounds. Id.
In exercising its discretion in a marital dissolution proceeding, the court is required by RCW 26.09.080 to make a "just and equitable" property distribution, and is guided by the following factors:
(1) The nature and extent of the community property;
(2) The nature and extent of the separate property;
(3) The duration of the marriage; and
(4) The economic circumstances of each spouse at the time the division of property is to become effective[.]
*659 The typical formula used to determine the total community share of a pension is the months of service during marriage divided by the total months of service at retirement multiplied by the monthly benefit at retirement. In re Marriage of Greene, 97 Wash.App. 708, 713, 986 P.2d 144 (1999) (citing In re Marriage of Chavez, 80 Wash.App. 432, 436, 909 P.2d 314 (1996)). The community share of a pension may include increased benefits attributable to salary increases following dissolution but not increases due to additional years of service. Chavez, 80 Wash.App. at 437-38, 909 P.2d 314.
Perry does not contest the equation used to apportion his share of Theresa's pension benefits.[4] What he does dispute is the trial court's refusal to reapportion his share once Theresa becomes eligible to retire as an officer, and again when she actually retires.[5] And he argues that this court should adopt a per se rule requiring that the nonmilitary spouse's proportionate share of the pension be based on the military spouse's actual rank and eligibility for retirement pay at any given time, up to and including the actual date of retirement.
But our Supreme Court has said, with respect to the division of military retirement benefits, that "[t]here can be no set rule for determining every case and as in all other cases of property distribution, the trial court must exercise a wise and sound discretion." Wilder v. Wilder, 85 Wash.2d 364, 369, 534 P.2d 1355 (1975). This case illustrates the wisdom of that premise. Here, Perry was in need of an income stream to supplement his anticipated future earnings, given the fact that he had served primarily as a homemaker during much of the marriage. And so the parties agreed that Perry should commence receiving his proportionate share of the military pension at the earliest date that Theresa could retire and still draw a pension, that being in July 2000. Because Theresa had no intention of retiring then, nor for many years in the future, Perry's monthly payments will come from Theresa rather than through the Veteran's Administration, until such time as she actually retires. Perry overlooks the fact that his share of the pension effectively reached pay status as of the date that Theresa first became eligible for retirement. Once the court decided to award payments to Perry for his proportionate share of the pension starting in 2000, it would have been improper for the court to treat the matter as if Perry had been required to wait to receive pension benefits until 2002, and even more improper to treat the matter as if Perry had been required to wait until Theresa actually retires to start drawing benefitsunless, of course, the court were also to require Perry to reimburse the marital community for all the payments received by him in the interim.
In In re Marriage of Bulicek, 59 Wash. App. 630, 638-39, 800 P.2d 394 (1990), we affirmed the trial court's award of pension benefits on a percentage, as-received basis, noting that the community was entitled to share in post-separation increases in the pension's value because such a disposition "shares the risks inherent in deferred receipt of the income[.]" Here, the court's award did not leave Perry with such risks.
As we noted in In re Marriage of Hurd, 69 Wash.App. 38, 44-46, 848 P.2d 185 (1993), the present value of a defined benefit plan is calculated based on several assumptions, including the projected date of retirement and the member's statistical life expectancy. "A member who retires at the first eligibility date may receive a smaller monthly benefit than if he chooses to retire later, but for a longer period of time, based upon a longer projected life expectancy. Thus, the present *660 value of such a plan will be greater if it is calculated as of the earlier date of retirement eligibility."[6]
Theresa's military retirement plan is also a defined benefit plan. In this case, because the trial court ordered that Perry's payments begin at Theresa's earliest possible retirement date, Perry will receive a stream of income that, based on Theresa's longer life expectancy after 20 years of active duty rather than after 30 years, may very well have a present value that exceeds the value of what he would receive if he were required to wait until Theresa actually retires to commence receiving benefitsnotwithstanding that his monthly payments would be larger at that time. In Hurd, the trial court received undisputed actuarial evidence that the value of the community share in the pension was worth more at the time of the retirement plan's earliest eligibility date than it would be if the employed spouse continued to work and chose to retire at a later date. Id. at 45, 848 P.2d 185. Perry has not presented actuarial evidence to either support or contradict such a conclusion in this case; thus he has not shown that the court's division resulted in an inequity to him.
Concluding that the court's division of the military pension was not an abuse of discretion, we affirm the judgment.
The remainder of this opinion lacks precedential value and will not be published in the Washington Appellate Reports but will be filed of public record in accord with RCW 2.06.040.
AGID, C.J., and GROSSE, J., concur.
NOTES
[1] Perry Harris also appeals the spousal maintenance and child support awards. We treat those issues in the unpublished portion of this opinion.
[2] "An officer of the Navy or the Marine Corps who applies for retirement after completing more than 20 years of active service, of which at least 10 years was service as a commissioned officer, may, in the discretion of the President, be retired on the first day of any month designated by the President." 10 U.S.C.A. 6323(a)(1).
[3] The court also awarded Perry his proportionate share of such cost-of-living increases as Theresa would be receiving if she were actually retired, and spousal maintenance until Theresa commences paying him his share of the pension.
[4] Perry's 41.4% share was calculated by taking one-half the fraction of 16.5 years (representing the marital community) over 20 years (representing the time Theresa was first eligible to retire), or ½(0.825). The $450 monthly payment figure was calculated by taking 41.4% of Theresa's pension entitlement at 20 years (one-half her base pay rate at 20 years), or 41.4% of ½(2,172.60). Thus, 41.4% (1086.30) = 450.
[5] Perry apparently misunderstands the formula. His proportionate share of the pension would not remain at 41.4% of the total. Rather, if the court were to have recalculated his share as of June 2002 after (roughly) 22 years of active duty, the marital community share of the pension would become 75% and Perry's share would be 38% of the monthly total. And after 30 years of active service, the community share would become 55% and Perry's share would be 28% of the monthly total.
[6] The defined benefit plan described in Hurd was the Law Enforcement Officers' and Fire Fighters' Retirement System (LEOFF) plan I. 69 Wash. App. at 44, 848 P.2d 185.