52 P.3d 512 (2002)
147 Wash.2d 184
In re the MARRIAGE OF Raymond WRIGHT, Respondent, and
Elisabeth Wright, Petitioner.
No. 71619-6.
Supreme Court of Washington, En Banc.
Argued May 16, 2002.
Decided August 22, 2002.
*513 David Trujillo, Yakima, for Petitioner.
Dauber Bartheld & Schwartz, Richard Bartheld, Yakima, for Respondent.
OWENS, J.
At issue in this dissolution action is the method for calculating the present value of an employee-spouse's vested but unmatured pension. The trial court exercised its discretion and based the present value on what it found to be the employee-spouse's likely retirement age rather than on the earliest date at which the pension would mature. The Court of Appeals affirmed the decision. We likewise conclude that, under Washington law, a trial court's calculation of the present value of a community owned pension need not be based on the employee-spouse's earliest retirement date. Because we agree with the trial court and the Court of Appeals that such a requirement would encroach upon the necessary discretion of the trial court at dissolution, we affirm the Court of Appeals.

FACTS
Raymond K. Wright and Elisabeth Wright were married on April 20, 1990, in Leavenworth, Washington. The couple separated on November 20, 1998, and Mr. Wright filed for dissolution on December 2, 1998. The parties were unable to agree on the value of Mr. Wright's community owned pension.
Mr. Wright began working for the Yakima Valley School in Selah, Washington, in May 1979. He received employee retirement benefits under the State of Washington's Public Employees Retirement System, Plan I (PERS I). Mr. Wright was vested in PERS I after earning five service credit years. He is eligible to retire from active service and collect a pension at any age with 30 service credit years, at age 55 with 25 service credit years, or at age 60 with 5 service credit years. Because Mr. Wright is a vested member of the plan, if he leaves his PERS covered employment before meeting those eligibility requirements (that is, before the pension matures), he may either withdraw his contributions or may allow the contributions to remain in the plan until he is eligible to retire from inactive status (at age 65 or, with a reduced benefit, at age 60). If Mr. Wright continues his PERS covered employment until his 55th birthday, April 20, 2007, he will have accrued at least 25 service credit years.
Although the portion of Mr. Wright's pension that he earned prior to his marriage on April 20, 1990, was his separate property, the couple's community property agreement converted all separate property into community property. The community property agreement is not a part of the record, nor does the record establish when the agreement was executed. In a memorandum filed in August 2000, Mr. Wright stated that Ms. Wright, who had worked for a time during their marriage as a legal secretary, prepared the agreement and that he "signed [it] without benefit of independent counsel." Clerk's Papers (CP) at 124.
To resolve the dispute regarding the division of the community property pension, Ms. Wright moved for summary judgment on July 18, 2000, asking the trial court to hold as a matter of law that the present value of *514 retirement benefits must be based on the earliest date at which the pension matured. The parties accepted as the maturation date of the pension Mr. Wright's 55th birthday. Whereas Ms. Wright asked that the pension's value be based on retirement at age 55, Mr. Wright asked the trial court to value his pension using a retirement age of 65. He stated that he would not retire until then because "his monthly benefit at age 55 will be approximately 20% less than his present net monthly income" and that his "strong desire to purchase a residence dictates that he continue employment past age 55." CP at 127. Ms. Wright submitted no evidence regarding Mr. Wright's likely retirement date.
On August 22, 2000, having retained actuaries to determine the present value of the PERS I pension as of the parties' separation date, the parties entered a stipulated order providing, in part, as follows:
Further, the parties stipulate and agree that said pension has a present value of $39,400.00 if Petitioner were to retire at age 65; a present value of $59,949.00 if Petitioner were to retire at age 60; and a present value of $87,280.00 if Petitioner retires at age 55.
Further, the parties stipulate and agree that the Court's determination of present value of the retirement shall be binding for purposes of trial upon the parties and the parties hereby waive presentation of this issue at time of trial and further waive presentation of testimony of all evidence on this issue, except in the form of sworn declaration or affidavit in support of their motion for determination of present value.
The parties further stipulate and agree that the assets and liabilities of the parties shall be divided in a fashion which results in a net division of assets and liabilities between the parties 50% to Petitioner and 50% to Respondent.
CP at 89-90.
On August 23, 2000, the trial court issued its memorandum decision on the summary judgment motion and, on October 27, 2000, entered an "Order on Summary Judgment," setting forth findings of fact and conclusions of law. CP at 84-86. Rejecting Ms. Wright's position that, as a matter of law, the pension should be valued as of the earliest date it would mature, the court asserted that, as a matter of law, it must exercise its discretion to determine Mr. Wright's likely retirement date. The court concluded that, "on a more probable than not basis," Mr. Wright was likely to stay in his current job until age 65: "[T]he Court ... therefore finds as a matter of law his retirement age to be sixty-five for the calculation of the community share of the pension. Summary judgment is granted accordingly."[1]
The dissolution decree was likewise entered on October 27, 2000.[2] Exhibit A to the decree is an appraisal chart that lists, values, and allocates each community asset (from the old pitchfork worth a dollar to the PERS I retirement plan valued at $39,400.00). The chart also lists and assigns the community debts,[3] calculates the net assets to both parties, and evens out the assets by awarding Mr. Wright a judgment of $7,966.78 against Ms. Wright. With that judgment, Mr. Wright's net assets from the property division are $49,737.22, of which $39,400.00 is the value that the court assigned to his PERS I retirement plan. Ms. Wright's net assets are also $49,737.22, with the bulk of that amount *515 being the fair market value of the community's house, $36,393.00. CP at 14, 36
On November 6, 2000, Ms. Wright filed a motion for reconsideration and sought to supplement the record. While denying the motion for reconsideration, the court permitted Ms. Wright to supplement the record; accordingly, she submitted Mr. Wright's trial testimony that the parties had considered a retirement age of 55 because they expected to pay off the mortgage on the family residence at about that same time. Ms. Wright filed a notice of appeal on November 21, 2000, seeking review of the summary judgment order, the order denying reconsideration, and the decree of dissolution. The Court of Appeals affirmed, concluding that the trial court "did not abuse its discretion when it valued the pension using the date Mr. Wright turned 65 years old as the projected date of retirement." In re Marriage of Wright, 107 Wash.App. 485, 487, 27 P.3d 263 (2001). This court granted Ms. Wright's petition for review.

ISSUE
When valuing a vested but unmatured pension at dissolution by reducing it to present value, must the trial court, as a matter of law, base its calculations on the earliest date at which the pension matures, or may the court in its discretion use the later date of the employee-spouse's likely retirement?

ANALYSIS
Ms. Wright's petition raises the question of law set forth above. This court's review of that purely legal issue is de novo. Fluke Corp. v. Hartford Accident & Indem. Co., 145 Wash.2d 137, 143, 34 P.3d 809 (2001) (citing Island County v. State, 135 Wash.2d 141, 160, 955 P.2d 377 (1998)).
As with a vested, matured benefit, a vested but unmatured benefit is property to be divided at dissolution. Edwards v. Edwards, 74 Wash.2d 286, 444 P.2d 703 (1968); Baselt v. Baselt, 37 Wash.2d 461, 224 P.2d 631 (1950). The right to receive retirement benefits is "vested" "[w]hen the participant in a plan has accrued a nonforfeitable right to payment at some future time." WASHINGTON STATE BAR ASS'N, COMMUNITY PROPERTY DESKBOOK § 3.24, at 3-24 (2d ed.1989). A retirement plan is said to have "matured" at the time the participant is eligible to receive the first payment. See In re Marriage of Hurd, 69 Wash.App. 38, 45, 848 P.2d 185 (citing In re Marriage of Skaden, 19 Cal.3d 679, 139 Cal.Rptr. 615, 566 P.2d 249, 251-52 (1977), cited in COMMUNITY PROPERTY DESKBOOK, supra, § 3.24 at 3-25), review denied, 122 Wash.2d 1020 (1993). If the pension does not vest until it matures, the term "vested" may be used synonymously with "matured." See, e.g., Wilder v. Wilder, 85 Wash.2d 364, 366, 534 P.2d 1355 (1975).
Courts have used two methods when dividing at dissolution a community owned pension"the `lump sum' method and the `pay as it comes in' method":
Under the lump sum method the present value of the pension is determined as of the date of divorce. Generally, the employee spouse is awarded the entire pension, and the nonempolyee [sic] spouse receives other community assets of equal value as compensation for his or her one half interest. Use of the pay as it comes in method requires the court to reserve jurisdiction over the case until the employee spouse is first eligible for retirement or actually retires. The benefits are then valued and divided between the former spouse when they are actually received.
Tami C. Budo, When the Marital Community Is Dissolved, May One Party Dilute Their Spouses [sic] Interest in the Pension Benefits by Choosing to Delay Retirement? 29 IDAHO L.REV. 1036, 1036-37 (1992-93) (footnote omitted). Washington courts have relied on both "the lump sum method" and "the pay as it comes in method." See DeRevere v. DeRevere, 5 Wash.App. 741, 746, 491 P.2d 249 (1971) (explaining that the court may "develop a percentage division of the monthly amount" or may "award ... a sum certain, which may, or may not, be payable over a specified time period"); see also In re Marriage of Bulicek, 59 Wash.App. 630, 639, 800 P.2d 394 (1990) (rejecting argument that pension must be reduced to present value); Ruggles v. Ruggles, 116 N.M. 52, 860 P.2d 182, 191 n. 10 (1993) (observing that Washington *516 courts "recognize discretion in their trial courts to make either a lump sum or a deferred distribution").
In the present case, the parties' stipulation adopted the lump-sum method, whereby Mr. Wright's community owned pension was to be reduced to present value. Ms. Wright asked the trial court to hold as a matter of law that the present value must be calculated using the pension's earliest possible maturation date. To support that position, Ms. Wright has relied heavily on Division One of the Court of Appeal's decision in Hurd, but that case involves a vested and matured pension. At the time of dissolution, Mr. Hurd's pension was "both a vested and a matured benefit," because he could have retired at any time and exercised his "unconditional right to immediate payment of his pension." 69 Wash.App. at 45, 848 P.2d 185. Under such circumstances, the court concluded that "the present value of Mr. Hurd's monthly pension should be determined assuming Mr. Hurd's retirement as of the date of dissolution, rather than at some future date." Id. at 46, 848 P.2d 185.
More to the point are cases that have addressed the allocation of unmatured pensions. Most of these cases are distinguishable from Wright, however, because the trial courts allocated the unmatured pension not by reducing it to present value and awarding a lump sum but by deferring the distribution of benefits until pension payments had actually begun. In Wilder, this court considered whether the trial court had properly awarded Ms. Wilder a share of Mr. Wilder's unmatured military pension. To meet the eligibility requirement of 20 years, Mr. Wilder would have to reenlist and serve an additional year after his current enlistment expired. The Wilder court concluded that the trial court's award of a monthly payment to Ms. Wilder, commencing from the date that Mr. Wilder would have served 20 years, was not an abuse of discretion. While it is true that the Wilder court upheld an award beginning on the pensioner-spouse's earliest retirement date, that decision concerned an allocation by the deferred distribution method. More importantly, the Wilder court underscored that no single method or bright-line rule should apply to all cases:
We think the proper rule is that the court must consider all the circumstances and evaluate the probability that the party who has a contingent right to a pension will eventually enjoy that pension. The length of time remaining before eligibility matures is a factor for the court to consider; also, the other options open to the person and the likelihood that he may, in the exercise of a reasonable judgment, decide to pursue some other career and abandon his pension rights. Also, the court must take account of the community's investment in the pension system and determine whether, in the event the party entitled to the pension decides to abandon his rights, the community's contribution should nevertheless be considered an asset under his control and be balanced against other assets awarded to the other party. There can be no set rule for determining every case and as in all other cases of property distribution, the trial court must exercise a wise and sound discretion.

85 Wash.2d at 369, 534 P.2d 1355 (emphasis added). Plainly, Wilder does not support Ms. Wright's proposition that the earliest retirement date must be used when allocating an unmatured pension by reducing it to present value and awarding a lump sum.
Similarly, in at least two other cases involving unmatured pensions, the trial courts divided the community interest not by the present value method but by the deferred distribution approach, assigning the nonemployee-spouse a future percentage of the monthly pension. First, in In re Marriage of Knies, 96 Wash.App. 243, 979 P.2d 482 (1999), the trial court awarded the wife half of the husband's unmatured retirement benefits on a deferred distribution basis (the dissolution was in 1990, and the pension was to mature in 1996). However, six days before the pension would have matured (when the husband would have accrued 25 years of service), he was awarded a job related disability with monthly disability payments. When he chose not to serve the remaining six days to convert the disability benefits into retirement benefits, the wife filed a postdissolution motion to modify the property division, asking the court to award her a percentage *517 of the disability benefits comparable to what she would have received per month from the husband's retirement plan. The trial court awarded the wife a monthly payment beginning as of the date of trial, October 27, 1997, and both parties appealed, with the wife contending that the commencement date should have been March 14, 1996, the earliest date at which the husband became eligible to receive retirement benefits. As the Court of Appeals explained, the trial court chose to use, not the date at which Mr. Knies would have reached the 25-year threshold, but rather the most likely date at which he would have retired. Based on the evidence at trial, the average retirement age was between 26 and 28 years of service; thus, the trial date, 19 months after Mr. Knies would have had 25 years of service, approximated the normal retirement date. The Court of Appeals acknowledged that the determination of the start date for the pension was within the trial court's discretion and that that discretion had been exercised on tenable grounds. Thus, the Knies court did not use the earliest possible retirement date to begin the pension allocation (the approach that would have been consistent with the rule Ms. Wright advocates for the present value method); rather, the Knies court exercised its discretion and ruled that the pension allocation would begin on the employee-spouse's likely retirement date (the approach the trial court took in the present case).
As in Wilder and Knies, in In re Marriage of Harris, 107 Wash.App. 597, 27 P.3d 656 (2001), the court divided an unmatured pension by the deferred distribution method. The dissolution decree was entered on September 10, 1999. Ms. Harris was not eligible to retire until July 2000, when she would have accrued 20 years of military service, but she testified at trial that she intended to serve 30 years, at which point she could retire at a higher rank. Both parties agreed that Mr. Harris, who "had served as the primary homemaker spouse during a substantial part of the marriage and was unemployed at the time of trial," would "begin receiving his proportionate share of the pension at the earliest date that Theresa could commence drawing pension payments if she were to retire, that is, on August 1, 2000." Id. at 600-01, 27 P.3d 656. The monthly payments were to come from Ms. Harris, not the Veteran's Administration, since Ms. Harris was electing not to retire. Mr. Harris argued that the trial court should have awarded him step increases in the monthly pension amount when Ms. Harris was eligible to retire as an officer and when she actually retired. Id. at 601, 27 P.3d 656. Concluding that the trial court had not abused its discretion, id. at 604, 27 P.3d 656, the Court of Appeals pointed out that, by receiving pension payments at the earliest retirement date, Mr. Harris had avoided the risk inherent in delaying receipt until Ms. Harris gained eligibility to retire as an officer or until she had actually retired.
While Harris might seem to support Ms. Wright's argument that the earliest retirement date must be used, the decision is distinguishable in two respects. First, the Harris court observed no bright-line rules regarding the method for allocating the pension; rather, the court considered whether the trial court had abused its discretion. Second, because the division in Harris was not made by the present value method but by a modified version of the deferred distribution approach, Ms. Harris was not forced to incur as much risk as Ms. Wright's position would place on Mr. Wright: Ms. Harris was not being asked to pay before her pension matured, but Ms. Wright seeks an immediate lump-sum payment for pension benefits that will only mature if Mr. Wright works an additional seven years. Harris would be analogous to the present case only if Ms. Wright were asking to receive her share on April 20, 2007, when Mr. Wright's pension actually matures.
Finally, the facts in In re Marriage of Jacobs, 20 Wash.App. 272, 579 P.2d 1023 (1978), are perhaps somewhat closer to the facts in the present case. The trial court in Jacobs made a lump-sum allocation of an unmatured pension. The court awarded Ms. Jacobs $10,000 as her community share of Mr. Jacobs's unmatured military pension, specifying that $4,000 would be paid immediately and the remainder at $150 per month at eight percent interest. Id. at 275, 579 P.2d *518 1023. Ms. Jacobs contended that the award was inadequate, and Mr. Jacobs maintained that the pension should not have been allocated before he was eligible for it or had actually begun receiving it. Id. The Jacobs court observed, however, that prior Washington cases had held that the court could exercise its discretion in awarding unmatured retirement benefits. Id. (citing, inter alia, Wilder and DeRevere). Consistent with Wilder, the Jacobs court stated that "[t]here is no one method of making the distribution." 20 Wash.App. at 277, 579 P.2d 1023. Although the trial court had calculated the community interest of the pension "as of the date the husband was eligible to retire," the court had also "considered the length of the marriage, the parties' respective abilities, as well as their age and health," and had "t[aken] into account the condition in which the parties would be left after dissolution." Id. at 275-76, 579 P.2d 1023. Because the trial court had erred by failing to view Washington as the couple's domicile for the duration of the marriage, the Court of Appeals remanded the matter to the trial court for reconsideration of the community interest in the pension. The Court of Appeals made the following suggestions to the trial court on remand:
Furthermore, inasmuch as the court ordered installment payments, it may want to consider whether these installments would continue in the event Major Jacobs' right to the pension terminated either before or after the pension matured; whether the balance would be chargeable against Major Jacobs' estate should he die before the final installment was paid; and what the effect would be if Major Jacobs abandoned the pension right before it matured. But the court did not err in adopting a lump-sum award with payment over a period of time.
Id. at 277, 579 P.2d 1023 (emphasis added).
Thus, the Jacobs case demonstrates that calculation of a lump-sum award for the nonemployee-spouse is a process involving considerable discretion on the part of the trial court. While the trial court in Jacobs used the earliest date that Mr. Jacobs would be eligible to retire, the ultimate computation of present value was made in light of a number of other factors. Moreover, the trial court in Jacobs sought to mitigate the burden of a lump-sum award by combining immediate payment with installment payments, and the Court of Appeals raised still further concerns about the uncertainty inherent in an unmatured pension and about the fairness of mandating payments for a pension that might never mature. Consequently, as was the case with the Wilder decision, the Jacobs decision does not support Ms. Wright's proposition that under Washington law a trial court calculating the present value of an unmatured pension must use the pensioner's earliest eligibility date for retirement.
In sum, Washington cases repeatedly underscore that property division at dissolution is within the broad discretion of the trial court. See RCW 26.09.080. Flexibility has been especially important in allocating the community interest in a retirement plan. Ms. Wright's position that a court using the present value method must base its calculations on the earliest eligibility date is a bright-line rule that runs counter to this court's observations in Wilder that the dissolution court "must consider all the circumstances" and that "[t]here can be no set rule for determining every case." 85 Wash.2d at 369, 534 P.2d 1355.

CONCLUSION
We decline to hold that, when a trial court values a vested but unmatured pension at dissolution by reducing it to present value, the court must base its calculations on the earliest date at which the pension matures. Such a holding would unwisely limit the broad discretion of the trial court in dividing property at dissolution. The Court of Appeals correctly concluded that the trial court was not required under Washington law to base its calculation of present value on Mr. Wright's earliest retirement date.
We affirm the Court of Appeals.
WE CONCUR: ALEXANDER, C.J., SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, CHAMBERS, BRIDGE, JJ.
NOTES
[1] CP at 85. Although Ms. Wright's motion was styled a summary judgment motion, the briefing and the stipulation make it clear that the parties were asking the trial court to make a binding ruling as to whether the present value of Mr. Wright's pension was to be based on his retirement at age 55, 60, or 65. Had Ms. Wright's motion been a summary judgment motion, the trial court would have been entitled to grant or deny her motion that the retirement age to be used in the calculations was, as a matter of law, 55. Mr. Wright apparently filed no cross motion for summary judgment, so the trial court had no basis for concluding as it did that the summary judgment motion had been "granted accordingly."
[2] CP at 9-13. The dissolution decree changed Ms. Wright's name to Elisabeth Theresa Smith, CP at 12, but for convenience, she is identified herein by her name as it appears in the case caption.
[3] Mr. Wright was assigned $12,662.56 of the community debt, while Ms. Wright was assigned $3,000.00. CP at 36.