IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Marriage of<br>JANICE A. HODGE,<br><br>                Appellant,<br><br>      and<br><br>MICHAEL R. HODGE,<br><br>              Respondent. | No. 82557-7-I<br><br><br>UNPUBLISHED OPINION |

BOWMAN, J. — In 2021, Janice and Michael Hodge dissolved their 40-year marriage after a 3-day dissolution trial. Janice[1] appeals, arguing the court abused its discretion by unfairly distributing property and calculating maintenance. We reverse and remand for further proceedings consistent with this opinion. We also award Janice attorney fees and costs on appeal.

FACTS

Janice and Michael married in California in 1981. During the marriage, Janice worked in the insurance industry, and Michael worked in risk management for several cities in California. The parties have two children.

In 2001, the parties bought a small house in North Bend, Washington, intending to retire in the area. They made extensive modifications over the years, eventually expanding the house to 5,023 square feet.

---

[1] For clarity, we refer to Janice Hodge and Michael Hodge by first name. We intend no disrespect.

This opinion bases the citations and pin cites on the Westlaw online version of the cited material.

In 2003, Michael retired. He received a pension under the California Public Employees' Retirement System (CalPERS). On retirement, Michael elected to receive a lower monthly payment in exchange for a 100 percent survivor benefit under his pension. He named Janice the sole beneficiary of the survivor benefit so she would receive his monthly pension payments after his death. Michael also collected Social Security benefits and a monthly disability benefit from the United States Department of Veterans Affairs (VA) for injuries he sustained while serving in the United States Marine Corps.

In 2004, the parties and their children left California and moved to their property in North Bend.[2] Sometime in 2007, Janice's mother and sister, Terry Styka, also moved into the parties' North Bend home. Janice's mother lived with them until she passed away about seven years later. At the time of dissolution, both parties' adult children and Janice's sister Terry[3] still lived in the home.

The parties separated in August 2019, and Janice petitioned for dissolution in October 2019. In January 2020, Janice sought temporary dissolution orders. A commissioner entered a temporary financial order that allowed Janice to stay in the marital home and ordered Michael to pay the mortgage and home equity line of credit (HELOC) to "preserve the community asset." The court also ordered Michael to pay Janice monthly maintenance of $2,000.

---

[2] For a short while, they lived in a fifth wheel trailer during house improvements.

[3] We refer to Terry Styka by her first name for clarity and flow and intend no disrespect by doing so.

2

In January 2021, the court held a three-day dissolution trial. One issue at trial was how to account for Michael's CalPERS survivor benefit. Undisputed testimony from Michael's financial expert valued the survivor benefit at $434,333. Both Michael's and Janice's financial experts testified that Janice could be removed as the beneficiary of the survivor benefit if the court awarded Michael 100 percent of the CalPERS pension. In that event, Michael would receive a higher monthly payment from the pension.[4] In closing argument, Janice urged the court to award Michael all his pension with a lump-sum payout for her community share so she could be removed as the beneficiary of the survivor benefit.

On February 12, 2021, the court entered "Findings and Conclusions about a Marriage." The court valued the parties' North Bend home at $1.4 million, subject to a $59,818 mortgage and a $206,881 HELOC. The court also recognized that under the temporary order, Michael paid the parties' full mortgage and HELOC obligations during separation—$85,068 on the mortgage and $21,114 on the HELOC for a total of $106,182—from his separate VA and Social Security benefits.

The court valued Michael's CalPERS pension at $1,044,365 and designated $644,838[5] as community property. It found Michael receives a monthly income of $6,757 from that pension. The court also characterized the CalPERS survivor benefit as community property. It assigned the survivor

---

[4] Michael's monthly pension payment would increase between $400 and $1,500.

[5] In its subsequent dissolution orders and attached asset spreadsheets, the court valued the community portion of the CalPERS pension at $690,412.

benefit a "total present value" of $434,333. Finally, the court determined that Janice needs maintenance and Michael can pay. It ordered Michael to pay $1,750 per month in maintenance for the rest of Janice's life, secured by a life insurance policy. The court e-mailed its findings to the parties and asked Michael's counsel to draft a final decree.

Before submitting a proposed decree to the court, Michael requested a hearing to clarify the court's findings. On February 18, 2021, the court held a telephone hearing. At the hearing, Michael asked about "the court's intention regarding the CalP[ERS] survivor benefit in light of the court's finding regarding life insurance." Michael argued that after his death, Janice would receive the survivor benefit providing monthly income until her death, rendering life insurance to secure maintenance unnecessary. Janice objected, arguing that the court had not yet awarded the pension or survivor benefit. She again requested that the court award Michael 100 percent of the CalPERS pension so she could be removed as beneficiary of the survivor benefit.

The court did not recall whether the evidence at trial showed that the beneficiary of the survivor benefit was revocable or whether the court had yet awarded the benefit to either party. Michael's attorney argued the evidence showed the beneficiary was not revocable. Janice's attorney argued it was. The court expressed concern that requiring Michael to buy life insurance "at his age with all of his preexisting, very extensive and difficult medical condition[s]" would be very expensive. In response, Janice's attorney agreed to forgo her request for life insurance or any guarantee of the lifetime maintenance if the court

4

awarded Michael 100 percent of the pension and removed her as beneficiary of the survivor benefit. The court did not rule on the issue, but told Michael's attorney to submit proposed orders, and said that Janice could address any objections through post-trial motions.

The court issued a final dissolution decree on March 2, 2021. In the final decree, the court awarded Janice the marital home subject to a lump-sum payout to Michael for his half interest. It valued Michael's interest in the family home at $566,651[6] and stated it would order a judgment in that amount in "section 6" of the decree. But in section 6 of the decree, the court ordered that Janice "must pay [Michael] the amount of $886,709."[7]

The court awarded half the community portion of Michael's CalPERS pension—$345,206—to Janice and ordered that she receive a monthly benefit of $1,750 from the pension. The court also ordered Michael pay Janice $1,750 per month in maintenance for the rest of her life. But it relieved Michael of the obligation to purchase life insurance to secure the maintenance as required in the court's findings. Instead, it awarded Janice the CalPERS survivor benefit as separate property and noted that when Michael dies, in place of maintenance, Janice will receive payments from the CalPERS survivor benefit:

> [Michael]'s maintenance payment shall be replaced by monthly payments from the C[al]PERS Survivor benefit which will pay a

[6] $566,651 represents 50 percent of the $1,133,301 net value the court ascribed to the home in the asset spreadsheet after subtracting the remaining mortgage and HELOC payments.

[7] And in the court's award of separate property to Michael, it reflects the "sum of $886,709 from [Janice] for his interest in the family home."

monthly payment equal to the amount of [Michael]'s monthly benefit upon his demise and shall continue until [Janice]'s demise.

In the decree, the court referenced and attached as "Exhibit A" an asset spreadsheet reflecting the court's property distribution and showing a payment from Janice to Michael in the amount of $566,651, "equal to 50 [percent] value of [the] home.

Both parties moved for reconsideration in March 2021. Janice expressed concern that the court's order required her to pay Michael two money judgments—$566,651 and $886,709—which would result in an unfair division of community property. Janice also argued the order for maintenance was inadequate to balance the economic circumstances of the parties and to meet her need to pay monthly expenses. Michael argued that the court's $566,651 judgment was inadequate to fully equalize the court's distribution of property because it accounted for only his community share of the family home. According to Michael, the court should have entered a total judgment in his favor for $875,195 because "[s]everal assets were not included, several assets were incorrectly valued, debt was incorrectly valued[,] and [Michael]'s post-separation payments were not accounted for in the overall property distribution," resulting in "an unequal distribution of the estate."

On April 5, 2021, the court issued an amended final dissolution decree and attached an amended Exhibit A asset spreadsheet. The court ordered Janice to pay Michael a total money judgment of $875,195.[8] Exhibit A showed

---

[8] The court describes the judgment as Michael's personal property "for his interest in the family home . . . as an equalizing payment."

that the $875,195 judgment equalizes the division of assets to reach a 50/50 split after accounting for the court's assignment to Janice of the family home, half the community portion of the CalPERS pension, and the survivor benefit. The asset spreadsheet also shows a $106,182 lien against the community in favor of Michael for his predissolution payments of $85,068 for the mortgage and $21,114 for the HELOC to maintain the family home. Finally, the court explained that its maintenance award to Janice was fair "in consideration of all the factors," including Janice's needs, the other gainfully employed adults (the parties' two children and Janice's sister Terry) residing in her home, Michael's ability to pay, and the parties' standard of living during the marriage.

On November 30, 2021, Michael moved to clarify the court's amended final dissolution decree, asking whether the court intended to award Janice both $1,750 from the CalPERS pension and $1,750 in maintenance for a total monthly payment of $3,500, or just one monthly payment of $1,750. On January 19, 2022, the court ordered that Michael "pay a total of $1,750 to [Janice] from the C[al]PERS pension as and for spousal maintenance," eliminating the payment to Janice for her community portion of the pension. On March 2, 2022, a court commissioner entered a stipulated qualified domestic relations order (QDRO) directing monthly payments of $1,750 to Janice from Michael's CalPERS pension.

Janice appeals.

ANALYSIS

Janice argues the trial court abused its discretion in its property distribution and calculation of maintenance. She also asks for attorney fees and costs on appeal.

Property Distribution

Janice argues the court abused its discretion by crediting Michael for his predissolution mortgage and HELOC payments, awarding her a portion of Michael's CalPERS pension as an asset but then ordering it disbursed to her monthly as maintenance, and overvaluing and assigning Michael's CalPERS survivor benefit to her as an asset.

Under RCW 26.09.080, a trial court must make a just and equitable distribution of property. It must consider all relevant factors, including the nature and extent of the community property, the nature and extent of the separate property, the duration of the marriage, and the economic circumstances of the parties at the time of the property division. RCW 26.09.080. We will not disturb a trial court's order distributing property absent a showing that it abused its discretion. In re Marriage of Wallace, 111 Wn. App. 697, 707, 45 P.3d 1131 (2002). "A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or for untenable reasons." Id. And a court that rests its decision on facts unsupported in the record or reaches its decision by applying the wrong legal standard abuses its discretion. Hundtofte v. Encarnación, 181 Wn.2d 1, 7, 330 P.3d 168 (2014).

1. Mortgage and HELOC Payments

Janice argues that the trial court erred by creating a lien against the community in favor of Michael for the $106,182 he paid toward the mortgage and HELOC on the family home to preserve the community asset pending dissolution. Michael argues that "[t]here is nothing 'inequitable' in reimbursing [him] for these postseparation payments" because he paid them "from his VA disability compensation and [S]ocial [S]ecurity benefits, which were his separate property." We agree with Janice.

Community property is a form of partnership, with each spouse owning an undivided one-half interest in every community asset. Peters v. Skalman, 27 Wn. App. 247, 251, 617 P.2 448 (1980); In re Est. of Patton, 6 Wn. App. 464, 471, 494 P.2d 238 (1972). Spouses have a statutory obligation to maintain community assets to benefit the community. See RCW 26.16.030. The joint duty to maintain community assets continues until the marriage ceases to exist. Peters, 27 Wn. App. at 251. And losses or gains resulting from community assets flow to the community absent a showing of bad faith. Id.

The cost of maintaining Janice and Michael's family home as a community asset pending dissolution amounted to $106,182. That cost is a community obligation. But in a temporary order, the court ordered that Michael pay the entire obligation based on his financial ability. At dissolution, trial courts have discretion to order reimbursement to a party for their separate predissolution contributions to a community asset. See In re Marriage of Sedlock, 69 Wn. App. 484, 507-08, 849 P.2d 1243 (1993) (husband entitled to reimbursement of his

separate contributions to purchase stocks where the entire value of the stocks at dissolution are community property). But Michael's payment of $106,182 included both his community obligation and a separate contribution—payment of Janice's community obligation. By creating a lien in favor of Michael for $106,182, the trial court shifted the entire burden of maintaining the community asset from Michael to Janice. We remand for the trial court to correct the lien against the community to reflect only Michael's separate contribution of $53,091.[9]

### 2. CalPERS Pension

Janice argues that the trial court erred by awarding her a portion of Michael's CalPERS pension as an asset but then ordering it disbursed to her monthly as maintenance.[10] We agree.

---

[9] As much as Michael argues that his choice to pay the mortgage and HELOC from his VA and Social Security benefits rather than his pension entitles him to reimbursement for the entire amount, we are not persuaded. The Social Security Act, 42 U.S.C. §§ 301 to 1397mm, prohibits the use of legal process to reach Social Security benefits. 42 U.S.C. § 407(a); see also Tupper v. Tupper, 15 Wn. App. 2d 796, 805, 478 P.3d 1132 (2020). And federal law prohibits state courts from dividing VA disability benefits in a property distribution. Perkins v. Perkins, 107 Wn. App. 313, 318, 26 P.3d 989 (2001). But Michael cites no authority that electing to make payments from those sources entitles him to reimbursement. If a party cites no authority in support of a proposition, we may assume that counsel, after diligent search, found none. In re Marriage of Raskob, 183 Wn. App. 503, 517, 334 P.3d 30 (2014) (citing DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).

[10] Janice filed her opening brief on December 3, 2021. The trial court issued its order disbursing the $1,750 payment from Michael's CalPERS pension as maintenance on January 19, 2022. On February 9, 2022, Janice designated the order for the record on appeal. Then, on March 22, 2022, the court issued a QDRO, which Janice designated for the record on appeal six days later. Janice assigned error to both orders in her reply brief. Michael did not object to the assignments of error, and the parties addressed the issue at oral argument. And after oral argument, Michael filed supplemental authority related to the issue. As much as Janice did not strictly comply with the Rules of Appellate Procedure in her assignments of error, we choose to address the issue under RAP 1.2(a). See RAP 10.3(c).

Pensions earned and vested during a marriage are community assets that courts must value and distribute. DeRevere v. DeRevere, 5 Wn. App. 741, 745-46, 491 P.2d 249 (1971). A benefit vests when " 'the participant in a plan has accrued a nonforfeitable right to payment at some future time.' " In re Marriage of Wright, 147 Wn.2d 184, 189, 52 P.3d 512 (2002) (quoting WASH. STATE BAR ASS'N, COMMUNITY PROPERTY DESKBOOK § 3.24 (2d ed. 1989)). A benefit matures at the time the participant is eligible to receive the first payment. Id.

We have recognized two methods for distributing pensions. DeRevere, 5 Wn. App. at 746. Under the first method, the trial court determines the pension's community value, awards the entire asset to the earning spouse, and awards the nonearning spouse their share as a lump-sum payment or with other community assets to balance the award. Id.; Wright, 147 Wn.2d at 190. Under the second method, the trial court determines the community value of the pension and distributes the nonearning spouse's share in the form of monthly payments directly from the pension over the course of its life. DeRevere, 5 Wn. App. at 746.

Here, the trial court valued the community portion of Michael's CalPERS pension at $690,412. It then awarded half of that value—$345,206—to Janice and ordered that she receive her share in the form of $1,750 monthly pension payments. The court also awarded Janice $1,750 in monthly maintenance payments. But in the order granting Michael's motion to clarify, the court explained that it did not intend to order two $1,750 payments. Instead, the court intended to order Michael to pay only one $1,750 monthly payment as

11

maintenance drawn directly from the CalPERS pension.[11] As a result, the trial court awarded an asset to Janice for which she received no benefit. While the court assigned to Janice an asset worth $345,206 and ordered her to pay Michael a money judgment including an offset for that asset, it provided no mechanism by which Janice could receive payment for her share of the benefit. This was error.

We reverse the trial court's order distributing the CalPERS pension, vacate the QDRO, and remand for the trial court to redistribute the pension in a manner consistent with the law. The court may also redistribute other assets or liabilities necessary to achieve a just and equitable outcome in light of our ruling.

### 3. CalPERS Survivor Benefit

Janice argues that the trial court abused its discretion by overvaluing the CalPERS survivor benefit at $434,333. According to Janice, that award "inequitably equates that contingent future benefit with cash in hand."

But the trial court's valuation of the survivor benefit rests on the undisputed testimony of Michael's financial expert that "the value of the survivor benefit is $434,333." Janice did not challenge the value of the benefit or the process used by the expert to reach the value. She argued only that the trial

---

[11] It appears the court made this clarification to ensure that Michael's separate Social Security or VA benefits did not satisfy the maintenance award. But the Social Security Act allows transfers of benefits for the payment of maintenance. 42 U.S.C. § 659(i)(3)(B)(ii); see Tupper, 15 Wn. App. 2d at 804. It prohibits only the transfer of benefits "in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." 42 U.S.C. § 659(i)(3)(B)(ii); see Tupper, 15 Wn. App. 2d at 804. And federal law restricts courts only from treating VA disability benefits as divisible community property. See Mansell v. Mansell, 490 U.S. 581, 588-89, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989).

court should award Michael 100 percent of his pension and remove her as beneficiary of the survivor benefit. We generally will not consider issues raised for the first time on appeal. Roberson v. Perez, 156 Wn.2d 33, 39, 123 P.3d 844 (2005); see RAP 2.5(a).

Janice also argues that the trial court abused its discretion "when it forced [her] to pay $434,333 in cash to Michael now for the mere chance to receive a benefit of that value at some later time." According to Janice, the trial court's order "skewed the community property distribution so far in Michael's favor that the result is not a just and equitable distribution of marital property." In light of our ruling that the trial court must redistribute the CalPERS pension—an interrelated asset which controls the revocability of the survivor benefit beneficiary—we reverse and remand for the court to reconsider distribution of the CalPERS survivor benefit as well.[12]

Maintenance

Janice argues that the trial court erred by relying on the income of persons residing with her who do not contribute to her income when it determined her need for maintenance. Specifically, Janice assigns error to the trial court's

---

[12] We note that at the February 18, 2021 telephone hearing on Michael's request for clarification, the court was unsure about whether the survivor benefit beneficiary was revocable. In response, Michael's attorney misinformed the court that "both [parties' experts] agreed that there is a survivor benefit that does not go away." It is unclear the extent to which this interaction influenced the trial court's decision. Particularly considering Janice's stated lack of interest in the asset and her concession that if the court awarded Michael 100 percent of his pension and revoked the survivor benefit, she would forgo her request for life insurance or any other guarantee of her lifetime maintenance award.

finding that "Janice testified that she receives funds from [her children] monthly but failed to state the amounts."

We review a trial court's factual findings for substantial evidence. In re Marriage of Leaver, 20 Wn. App, 2d 228, 238, 499 P.3d 222 (2021). " 'Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.' " In re Marriage of Griswold, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002) (quoting Bering v. SHARE, 106 Wn.2d 212, 220, 721 P.2d 918 (1986)). When the trial court has weighed the evidence, we determine only whether substantial evidence supports the findings of fact and, if so, whether the findings in turn support the trial court's conclusions of law. In re Marriage of Rockwell, 141 Wn. App. 235, 242, 170 P.3d 572 (2007).

In support of its maintenance award, the trial court found that Janice "testified that she receives funds" from her adult children and her sister monthly, "but failed to state the amounts" of her children's incomes. It then made findings about both adult children's and Terry's gross monthly incomes. The court found the adults' gross monthly incomes totaled over $9,000. From those findings, the court awarded Janice $1,750 in monthly maintenance and concluded:

> Spousal maintenance was set [in] an amount that is just in consideration of all the factors including, but not limited to, the needs of [Janice], the other gainfully employed adults residing in her home, the ability to pay of [Michael] and the standard of living during [the] marriage.

But the finding that Janice received monthly payments from her adult children is unsupported by the record. Instead, Janice testified that she never collected any

14

rent from either child. She collected only reimbursement for their cellphone and car insurance payments because Janice paid "the whole bill."[13]

An erroneous finding of fact that materially affects a conclusion of law is prejudicial and warrants reversal. See Skagit County Pub. Hosp. Dist. No. 1 v. Dep't of Revenue, 158 Wn. App. 426, 449, 242 P.3d 909 (2010). Here, the trial court's reliance on its erroneous findings to impute to Janice the income of the adults living in her home when calculating the amount of maintenance necessary to meet Janice's needs warrants reversal.

We reverse and remand for recalculation of maintenance without considering the income of the other adults in the home.[14]

Attorney Fees and Costs

Janice asks for an award of attorney fees and costs on appeal. Under RCW 26.09.140, this court may, "in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." See also RAP 18.1(a). In exercising that discretion, "we consider the arguable merit of the issues on appeal and the parties' financial resources." In re Marriage of Raskob, 183 Wn. App. 503, 520, 334 P.3d 30 (2014). We balance the needs of the requesting party against the other party's ability to pay. In re Marriage of Trichak, 72 Wn. App. 21, 26, 863 P.2d 585 (1993).

---

[13] Similarly, Janice testified that she never collected any rent from her sister and that Terry only reimbursed her about $300 a month for utilities.

[14] Janice also argues the trial court abused its discretion because the maintenance award did not place her and Michael in "roughly equal positions." Because we reverse and remand for recalculation of maintenance on other grounds, we do not reach that argument.

Janice filed an affidavit of financial need in support of her request for attorney fees and costs. The declaration shows Janice has a monthly net income of $5,125 and net expenses of $18,410. It also shows she has paid $35,000 in attorney fees and incurred $3,301 in fees and costs. Michael filed a declaration in response which contends that Janice inflated her expenses, but he provides no information about his ability to pay. We award Janice attorney fees and costs subject to compliance with RAP 18.1.

We reverse and remand[15] for the trial court to correct the lien against the community reimbursing Michael for his separate contribution to maintain the family home pending dissolution, redistribute Michael's CalPERS pension, reconsider the award of Michael's survivor benefit, and recalculate maintenance. We vacate the QDRO and award Janice attorney fees and costs on appeal.

Brennan, J

WE CONCUR:

Smith, A.C.J.

Dwyer, J.

---

[15] Janice asks for a different judge on remand. The appearance of fairness doctrine entitles litigants to an impartial judge. Santos v. Dean, 96 Wn. App. 849, 856-57, 982 P.2d 632 (1999). But Janice fails to show bias warranting reassignment to a different judicial officer.