[No. 17358-1-II.   Division Two.   January 8, 1996.]

*In the Matter of the Marriage of* DAISY M. CHAVEZ, *Respondent,* and RAYMOND G. CHAVEZ, *Appellant.*

---

*Ross E. Taylor*, for appellant.

*Joel A. Feldman*, for respondent.

FLEISHER, J. — This case requires us to determine whether language in a dissolution decree giving each party "50% of Respondent's military retirement pension" entitles the wife to 50 percent of the husband's total pension benefits at retirement or is limited to those pension benefits accrued during the marriage. The trial court ruled that the husband's total pension should simply be divided in half. We hold that the decree limits the wife's share to one-half of the community portion of the pension. Therefore, we reverse.

## FACTS

Daisy and Raymond Chavez were married in 1965 and separated in November 1985. Daisy petitioned for divorce, and a decree was entered in June 1986. Both the petition and decree stated that among the property to be awarded to Daisy were:

7. 50% of Respondent's military retirement pension;

8. Any assets acquired by her after the parties' separation.

Similarly, Raymond was awarded, among other property:

4. 50% of his military retirement pension;

. . . .

6. Any assets acquired by him after the parties' separation.

At the time the decree was entered, Raymond had been

in the Army for 281 months, or nearly 24 years. All but 27 months were during his marriage to Daisy. Raymond retired in 1993 with a total of 365 months of military service, or just over 30 years. After serving 20 years, a member of the military is entitled to retire at 50 percent of his or her base salary. *E.g.*, 10 U.S.C. §§ 1406, 3911 et seq. For each additional year served, the pension increases by 2.5 percent, up to a maximum of 75 percent of base pay. Thus, because he had served for 30 years, Raymond was entitled to a retirement pension of 75 percent of his base salary.

Shortly before his impending retirement, Raymond moved to clarify the decree language regarding division of his pension. A court commissioner ruled that Daisy was entitled to half of the community's portion (figured to be 77 percent) of Raymond's pension, or 38.5 percent of his total pension. Daisy then filed a motion for revision of the order. Raymond filed a cross-motion, alleging that the commissioner had incorrectly calculated Daisy's portion of the pension. The trial court ruled that Daisy is entitled to half of Raymond's gross retirement pay based on his 30 years of service. Raymond appeals that decision.

## DISCUSSION

■ If a decree is ambiguous, it may be subject to a declaratory action to determine the parties' rights and liabilities. *Byrne v. Ackerlund*, 108 Wn.2d 445, 453, 739 P.2d 1138 (1987). The decree in this case is clearly ambiguous because it does not specify how, and at what point in time, Raymond's pension is to be divided in half.

■■ Construction of a decree is a question of law. *In re Gimlett*, 95 Wn.2d 699, 704-05, 629 P.2d 450 (1981). Thus, it is reviewed de novo. *State v. Campbell*, 125 Wn.2d 797, 800, 888 P.2d 1185 (1995). This court recently affirmed the long-standing rule regarding interpretation of judgments:

'Where a judgment is ambiguous, a reviewing court seeks to ascertain the intention of the court entering the original

decree by using general rules of construction applicable to statutes, contracts and other writings. . . . Normally the court is limited to examining the provisions of the decree to resolve issues concerning its intended effect.'

*In re Sager*, 71 Wn. App. 855, 862, 863 P.2d 106 (1993) (quoting *Gimlett*, 95 Wn.2d at 704-05).

██ Whether or not they are available at the time of dissolution, pension benefits, as deferred compensation, constitute property rights subject to division by the court. *In re Pea*, 17 Wn. App. 728, 731, 566 P.2d 212 (1977). But when a spouse continues to accumulate pension benefits following divorce, case law does not support the trial court's approach of simply dividing the total pension in half. *See In re Bulicek*, 59 Wn. App. 630, 638-39, 800 P.2d 394 (1990); *Pea*, 17 Wn. App. at 731. The method used by the *Bulicek* and *Pea* courts is to calculate the community share of the pension by dividing the number of years (or months) of marriage by the total years (or months) of service.[1] This calculation establishes the community portion of the total pension credits earned by the retiree. Thus, the correct formula to determine the community share is:

$$\frac{\text{years/months of marriage}}{\text{years/months of service}} \quad \text{X} \quad \begin{array}{c}\text{monthly benefit at}\\ \text{retirement}\end{array}$$

Daisy is entitled to one-half of this amount under the decree.

Having determined the formula to be used, the next inquiry is whether the community portion is determined as of separation or divorce, that is, whether the numerator is the months of marriage up until separation (246) or until divorce (254). Here, the decree states that Raymond is to be awarded any assets acquired by him after separation. Therefore, we hold that the numerator in this case is the

---

[1]In *Pea*, the parties were married for 13 years and the husband had served about 17 years in the military at the time of divorce; thus, his pension had not yet vested. The court apparently assumed that he would retire after serving 20 years and thus used 20 as the denominator. *Pea*, 17 Wn. App. at 730-31.

months of marriage up until separation. Thus, the share of Raymond's pension to which Daisy is entitled is determined by means of the following formula:

1/2   X   246/365   X   monthly benefit at retirement

Because Raymond served 30 years, his pension benefit is based on 75 percent of his salary at retirement. However, Raymond argues that his salary at retirement should not be used to calculate Daisy's share if that salary differed from the salary he was earning at the time of the divorce. Rather, he contends that Daisy's share should be based upon the salary he was receiving at the time of divorce. We disagree.

Raymond's argument fails to distinguish retirement benefits attributable to salary increases from those benefits attributable to additional years of service following divorce. The community share includes the former but not the latter. In *Pea*, which also involved a military pension, the court held that the community portion "should not be applied to those increases in the pension due solely to service beyond 20 years." *Pea*, 17 Wn. App. at 732. We agree that Daisy's share of the pension should not be increased due to the additional service credits (2.5 percent per year) that Raymond earned after the divorce. However, increases in pension benefits based on a retiree's higher salary at the time of retirement should be included in the community share. The fact that a retiree's final pension is calculated upon a salary that is unknown at the time the income is deferred is a normal and anticipated feature of this type of deferred compensation program.

An award of pension rights on an as-received basis is to be encouraged, because it avoids difficult valuation problems and shares in the risks inherent in deferred income. *Bulicek*, 59 Wn. App. at 638. In *Bulicek*, the court held that the spouse was entitled to share in benefit increases due to higher salary at retirement because "the prospective increase in retirement benefits due to increased pay after separation is founded on those . . . years

of community effort." *Bulicek*, 59 Wn. App. at 638. *Accord, In re Hurd*, 69 Wn. App. 38, 46, 848 P.2d 185, *review denied*, 122 Wn.2d 1020 (1993). We agree with the result reached in *Bulicek*, and do not view *Pea* as conflicting. The *Pea* court also held that the spouse should be entitled to share in postdivorce annual or cost-of-living increases, but not in those increases due solely to additional years of service. *Pea*, 17 Wn. App. at 732. Thus, we hold that Daisy's share of the pension should be based on Raymond's salary at the time of his retirement.

Raymond also argues that the trial court erred in awarding Daisy a portion of his gross pay rather than his net pay. He relies on *In re Haugh*, 58 Wn. App. 1, 8-9, 790 P.2d 1266 (1990), for the proposition that, under federal laws, a state court may not divide a spouse's gross military pension. But the holding in *Haugh* was not that broad; the court simply held that a particular court order purporting to divide tax liability improperly invaded the sphere of federal tax laws. *Haugh*, 58 Wn. App. at 10. The *Haugh* court also pointed out that under the Federal Uniformed Services Former Spouses Protection Act[2] (FUSFSPA), a state court may divide upon divorce only the "disposable" amount of a retiree's pay. *Haugh*, 58 Wn. App. at 8 (citing *Mansell v. Mansell*, 490 U.S. 581, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989)). Under the version of FUSFSPA then in effect, "disposable" retirement pay did not include amounts withheld for federal income taxes. *Haugh*, 58 Wn. App. at 8-9; former 10 U.S.C. § 1408(a)(4).

But this provision of FUSFSPA was amended in 1990 and no longer defines "disposable" retirement pay as total monthly pay less federal withholding tax. 10 U.S.C. § 1408(a)(4). Even before this amendment, courts in at least two other community property states held that federal law did not dictate that a former spouse's portion of a military pension must be based on net, rather than gross, benefits. *White v. White*, 105 N.M. 600, 734 P.2d

---

[2]10 U.S.C. § 1408.

1283, 1286-87 (Ct. App. 1987); *Casas v. Thompson*, 42 Cal. 3d 131, 720 P.2d 921, 933, 228 Cal. Rptr. 33, *cert. denied*, 479 U.S. 1012 (1986).

As the *Haugh* court pointed out, the determination of this issue should reflect the court's duty to consider all relevant factors under RCW 26.09.080 when dividing property. *Haugh*, 58 Wn. App. at 11. Primary among those factors is the economic circumstances in which the decree will leave the parties. *In re Mathews*, 70 Wn. App. 116, 121, 853 P.2d 462, *review denied*, 122 Wn.2d 1021 (1993). Thus, the trial court should be allowed to consider the economic effect on the parties of dividing the gross versus net pension. For these reasons, the trial court did not err as a matter of law in awarding Daisy a portion of Raymond's pension based on gross, rather than net, retirement income.

For these reasons, we reverse the trial court's decision and remand for proceedings consistent with this opinion.

HOUGHTON, A.C.J., and MORGAN, J., concur.

Review denied at 129 Wn.2d 1016 (1996).