[No. 24498-9-III. Division Three. August 9, 2007.]

*In the Matter of the Marriage of* PEGGY MARIE BURETA, *Respondent*, and ROBERT THOMAS BURETA, *Appellant*.

*Peter S. Lineberger*, for appellant.
*Hollan Ilene McBurns*, for respondent.

¶1 BROWN, J. — This marriage dissolution pension payment dispute between Robert T. Bureta and Peggy M. Bureta involves deciding whether their pro se agreement dividing the husband's military pension until remarriage is affected by Ms. Bureta's failed same-sex marriage attempt in Oregon. Mr. Bureta unsuccessfully asked the trial court to stop the pension payment, and he appealed. The parties agree that under Oregon law, the attempted marriage was void ab initio. We agree that under current Washington, Oregon, and federal law, same-sex marriages are not permitted and affirm.

## FACTS

¶2 The parties dissolved their 24-year marriage in January 1995. They agreed Ms. Bureta would receive 40 percent of Mr. Bureta's monthly military pension payment until Ms. Bureta "remarries or dies." Clerk's Papers (CP) at 20.

¶3 In 2004, Ms. Bureta and her same-sex partner traveled from Spokane to Multnomah County, Oregon, to be married after an official there ordered the county to issue marriage licenses to same-sex couples. But the Oregon Supreme Court held "[the] licenses issued to same-sex couples in Multnomah County . . . were issued without authority and were void at the time that they were issued." *Li v. State*, 338 Or. 376, 110 P.3d 91, 102 (2005). The Oregon court noted the Oregon constitution now provides " 'that only a marriage between one man and one woman shall be valid or legally recognized as a marriage.' " *Id.* at 97.

¶4 Mr. Bureta learned of the ceremony and successfully asked the pension administrator to terminate Ms. Bureta's

payment. Payments were restored after Ms. Bureta complained she technically was not remarried. The administrator notified Mr. Bureta that the federal government does not recognize same-sex marriages but would terminate Ms. Bureta's payment if he obtained a "court order." CP at 38, 40.

¶5 Mr. Bureta moved to enforce the decree and requested conversion damages. The court denied Mr. Bureta's request, finding "[Ms. Bureta and her partner] were not legally married" and therefore termination of the pension payments was not mandated. CP at 111. Filing a memorandum decision, the court also denied both parties' requests for attorney fees. Mr. Bureta appealed. We stayed the appeal, pending our Supreme Court's decision in *Andersen v. King County*, 158 Wn.2d 1, 138 P.3d 963 (2006).

## ANALYSIS

### A. Pension Payments

¶6 The issue is whether the trial court erred in denying Mr. Bureta's request to stop pension payments based on Ms. Bureta's alleged remarriage.

¶7 We interpret a dissolution decree as a question of law. *In re Marriage of Chavez*, 80 Wn. App. 432, 435, 909 P.2d 314 (1996). Thus, our review is de novo. *McDonald v. State Farm Fire and Cas. Co.*, 119 Wn.2d 724, 730-31, 837 P.2d 1000 (1992).

¶8 Here, the decree states the pension payments shall cease if Ms. Bureta "remarries." CP at 20. Our legislature has defined a "marriage" as a civil union between a man and a woman. RCW 26.04.010(1). Further, the legislature has expressly prohibited marriage "[w]hen the parties are persons other than a male and a female." RCW 26.04.020(1)(c). Further, "Washington's long-standing definition of marriage as the union of one man and one woman and [Washington's 1998 defense of marriage act] are both constitutional." *Andersen*, 158 Wn.2d at 91.

¶9 Washington does not recognize a union between two women. Moreover, Oregon considers the marriage void. *Li*, 110 P.3d at 102. The parties' decree states the pension payments to Ms. Bureta would cease if she "remarries," an unambiguous term. As "marriage" is defined in Washington, Ms. Bureta has not remarried. The record does not show the parties intended the word "remarries" in their decree to include unrecognized civil ceremonies with same-sex partners. The sole other terminating provision provided for is death. No evidence shows cohabitation would terminate the pension payment. We cannot implant new terms into the parties' agreement.

¶10 While Mr. Bureta requests relief based on equity and common law principles, neither is appropriate here because statutory authority settles this area of law and the decree is unambiguous. *See In re Parentage of L.B.*, 155 Wn.2d 679, 689, 122 P.3d 161 (2005) (when legislative enactments incompletely speak to an area of law, courts may invoke their equity powers and common law responsibilities to respond to the needs of children and families), *cert. denied*, 547 U.S. 1143 (2006). We are bound by the decree. Further, Mr. Bureta does not persuade us that this disagreement over an agreed property division decree necessarily raises the court's equity powers.

¶11 Given all, we conclude the trial court did not err in denying Mr. Bureta's request for an order terminating pension payments to Ms. Bureta.

### B. Conversion Theory

¶12 Next, Mr. Bureta contends he is entitled to conversion damages. "[T]o maintain a conversion action, the plaintiff must establish 'some property interest in the goods allegedly converted.'" *In re Marriage of Langham*, 153 Wn.2d 553, 565, 106 P.3d 212 (2005) (internal quotation marks omitted) (quoting *Meyers Way Dev. Ltd. P'ship v. Univ. Sav. Bank*, 80 Wn. App. 655, 675, 910 P.2d 1308 (1996)). But, under our analysis, Ms. Bureta has a decreed

property interest Mr. Bureta's pension. Thus, Mr. Bureta's request for damages is unjustified.

## C. Attorney Fees

¶13 Mr. Bureta requests attorney fees and costs below and on appeal based on the parties' "hold harmless" provision in their dissolution decree, which relates to necessary fees in resisting collection actions. CP at 17. This provision does not apply to our facts. Moreover, Mr. Bureta has not prevailed. His request is denied.

¶14 Affirmed.

Sweeney, C.J., and Kulik, J., concur.