IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | |
| | ) | No. 31320-4-III |
| BRIAN DALE HAMOND | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| PATRICIA CAROL ABRAMS- | ) | |
| HAMOND, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, J. — In this divorce action, Brian Hamond (Hamond) appeals the trial court's characterization of his Law Enforcement Officers' and Fire Fighters' (LEOFF) Retirement plan as entirely community property and the trial court's division of the plan benefits equally. Hamond argues that a portion of his LEOFF plan represents the amount of Social Security he would otherwise receive. He labels this portion "in-lieu-of Social Security." Hamond argues that the court should deduct an "in-lieu-of" amount as his own separate property prior to dividing his LEOFF plan equally, since he, in turn, is not entitled to any portion of his wife Patricia Abrams-Hamond's (Abrams) Social Security payments. Hamond also argues on appeal that the trial court should have, but failed to use the "time rule" method in determining what portion of this LEOFF plan benefits

should be available to his wife. We affirm the trial court.

## FACTS

Brian Hamond and Patricia Abrams-Hamond married on July 20, 1985. The parties separated on March 17, 2011, and on June 13, 2011, Hamond petitioned for dissolution of the marriage. Hamond was 52 years old, and Abrams was 50, upon the divorce filing.

Hamond and Abrams agreed to the division of their property, except their retirement accounts. To resolve this issue, Hamond and Abrams agreed to a trial by declarations, without oral argument or oral testimony.

Upon separation, the parties held five retirement accounts. Abrams had three retirement accounts: a defined benefit plan, a Teachers Retirement System (TERS) III plan, and a *Spokesman Review* plan. Hamond had two retirement accounts: a deferred compensation plan and his LEOFF plan. Both parties asked the court to award Abrams her defined benefit plan and Hamond his deferred compensation plan, noting the parity in value at just over $50,000. Both parties also asked the court to divide Abrams' TERS III and *Spokesman Review* plans equally. The parties disagreed as to how to divide Hamond's LEOFF plan.

Hamond asserts that his LEOFF plan has rendered Hamond ineligible for federal Social Security benefits. Hamond argues that, because Abrams will receive Social Security benefits no matter what she receives in retirement benefits and he cannot do so

2

because of the nature of the LEOFF plan, refusing to separate the portion of his LEOFF retirement which equates to Social Security benefits leaves him disadvantaged. Abrams argues that she cannot be assured of any Social Security payments when she reaches retirement age. Abrams asked the trial court to divide Hamond's LEOFF plan equally without first deducting an "in-lieu-of" amount. No party suggested to the trial court that it apply the time rule method for calculating a distribution of benefits.

Hamond presented the trial court no calculation of the amount of Social Security benefits he would receive if he was not ineligible. He attached to his affidavit a letter from Brian Gosline, in which Gosline calculated the total present value of anticipated Social Security benefits for Abrams as $135,160.64. Hamond stated that Gosline could later perform a calculation to determine the amount of his LEOFF pension representative of Social Security benefits he would otherwise receive. He proposed that the trial court make its ruling and Gosline perform his calculation thereafter.

The affidavit of Brian Hamond does not list any qualifications for Brian Gosline to calculate the value of pensions or Social Security benefits. Brian Gosline's letterhead identifies him as an attorney and counselor at law, not as a retirement benefits expert. The content of his letter discloses none of his background or qualifications. In a motion for reconsideration, Hamond asked that the court deduct from his LEOFF account, before dividing the account equally, the amount Abrams will receive in Social Security benefits rather than the amount he would receive if eligible.

3

TRIAL COURT RULING

After reviewing the declarations from both Hamond and Abrams, the trial court

ruled:

> The parties have various retirement plans and accounts, including a
> deferred compensation plan, a LEOFF plan, a TERS III plan, a defined
> benefit plan and a Spokesman Review retirement plan before the Court for
> division in this dissolution. Here the Court would direct that the
> Respondent wife be awarded in total her defined benefit plan and that the
> Petitioner husband be awarded in total his deferred compensation account.
> The balance of retirement accounts (LEOFF plan, TERS III plan,
> Spokesman Review retirement plan) are *entirely community* and shall be
> divided equally between Petitioner and Respondent.

Clerk's Papers (CP) at 135 (emphasis added). The trial court thus declared that

Hamond's LEOFF plan was divisible community property.

LAW AND ANALYSIS

In Lieu of Social Security Benefits

Upon a marriage dissolution, all of the parties' property, separate and community,

is before the court for division. RCW 26.09.080; *Stokes v. Polley*, 145 Wn.2d 341, 347,

37 P.3d 1211 (2001); *Friedlander v. Friedlander*, 80 Wn.2d 293, 305, 494 P.2d 208

(1972). At issue here are pension benefits. Whether or not they are available at the time

of dissolution, pension benefits, as deferred compensation, constitute property rights

subject to division by the court. *In re Marriage of Chavez*, 80 Wn. App. 432, 436, 909

P.2d 314 (1996); *In re Marriage of Pea*, 17 Wn. App. 728, 731, 566 P.2d 212 (1977).

Before dividing property, the court must determine the correct character and status

4

of the property as community or separate. *Baker v. Baker*, 80 Wn.2d 736, 745, 498 P.2d 315 (1972); *In re Marriage of Hadley*, 88 Wn.2d 649, 656, 565 P.2d 790 (1977); *In re Marriage of DeHollander*, 53 Wn. App. 695, 700, 770 P.2d 638 (1989). While the character of property is not controlling, it is relevant to determine a just and equitable distribution. *Hadley*, 88 Wn.2d at 656. Washington courts refrain from awarding separate property of one spouse to the other if a just and equitable division is possible without doing so. *Stokes*, 145 Wn.2d at 347. Thus, a trial court's determination of an item of property as separate or community is an important first step in dividing the property. A trial court's characterization of property as community or separate is reviewed de novo by the appellate court. *In re Marriage of Chumbley*, 150 Wn.2d 1, 5, 74 P.3d 129 (2003).

In Washington, assets acquired during marriage are presumed community property. *Dean v. Lehman*, 143 Wn.2d 12, 19, 18 P.3d 523 (2001); Harry M. Cross, *The Community Property Law (Revised 1985)*, 61 WASH. L. REV. 13, 28 (1986); RCW 26.16.030. To rebut the presumption, a party must present clear and convincing evidence that the acquisition fits within a separate property provision. *Chumbley*, 150 Wn.2d at 5; *Dean*, 143 Wn.2d at 20; Cross, *supra* at 29.

Brian Hamond's appeal necessitates the consideration of the nature of Social Security benefits and LEOFF benefits. Despite her pessimism to the contrary, Patricia Abrams will receive Social Security payments upon the age of retirement. Hamond will

not. Despite being a pension, a spouse's Social Security account is off limits in a marital dissolution. 42 U.S.C. § 407(a) (1998) of the Social Security Act forbids transfer or reassignment of "[t]he right of any person to any future payment under this subchapter." While the act permits reassignment of Social Security benefits to pay for alimony or child support, it categorically excludes any similar payment obligation in conformity with a community property settlement, equitable distribution of property, or other division between spouses or former spouses. 42 U.S.C. § 659(i)(3)(B)(ii); *In re Marriage of Zahm*, 138 Wn.2d 213, 219, 978 P.2d 498 (1999). Thus, Social Security benefits are not subject to division in a marital property distribution case. *Zahm*, 138 Wn.2d at 219-20; *In re Marriage of Rockwell*, 141 Wn. App. 235, 244, 170 P.3d 572 (2007).

Federal statutes secure Social Security benefits as the separate indivisible property of the spouse who earned them. *Zahm*, 138 Wn.2d at 220. This approach ensures that the benefits intended for the beneficiary reach that party and that the benefits are insulated from the occasionally unpredictable fortunes of legal dispute. *Zahm*, 138 Wn.2d at 220.

The trial court correctly characterized Patricia Abrams' Social Security account as separate property. Brian Hamond wishes a portion of his LEOFF account to be depicted as separate property, but the law demands otherwise. Retirement benefits are considered deferred compensation for past services and thus are determined to be community property to the extent earned during marriage. *In re Marriage of Harris*, 107 Wn. App.

6

597, 602, 27 P.3d 656 (2001); *In re Marriage of Knies*, 96 Wn. App. 243, 251, 979 P.2d 482 (1999); *In re Marriage of Nuss*, 65 Wn. App. 334, 343, 828 P.2d 627 (1992). The trial court correctly characterized Hamond's LEOFF accrued pension as entirely community property until the dissolution of the marriage.

Characterizing Patricia Abrams' Social Security account as separate property and Brian Hamond's LEOFF account as community property does not end our analysis. Although the trial court may not distribute any of Abrams' Social Security benefits to Hamond, we still must address, as requested by Hamond, whether the trial court should have considered, when distributing assets, the anomaly that Hamond will not receive Social Security benefits in exchange for higher LEOFF payments.

Consistent with the objectives of RCW 26.09.080, while a trial court may not directly divide Social Security income in a divorce action, a trial court may still properly consider a spouse's Social Security income within the more elastic parameters of the court's power to formulate a just and equitable division of the parties' marital property. *Zahm*, 138 Wn.2d at 222; *Rockwell*, 141 Wn. App. at 245. Although Hamond wishes to characterize a significant portion of his LEOFF account as separate property, we recognize that the court could categorize the account entirely as community property yet distribute the entire or a large percentage of the account to Hamond as part of an equitable distribution, rather than dividing the LEOFF account in half as the trial court did.

7

Brian Hamond relies principally upon *In re Marriage of Rockwell*, 141 Wn. App. 235, 240, 170 P.3d 572 (2007), for his argument that the trial court should have considered his ineligibility for Social Security and refrain from dividing his LEOFF account evenly. In *Rockwell*, this court affirmed the trial court's consideration, when dividing property, of one party's ineligibility for Social Security. As the result of federal employment, Carmen Rockwell participated in the federal Civil Service Retirement System rendering her ineligible to participate in Social Security. Based upon expert testimony, the trial court determined that Carmen lost $159,464 in Social Security benefits because of her federal pension. The trial court "compensated" her for that amount in its division of property. The trial court noted Peter Rockwell's entitlement to Social Security benefits and their potential to increase and Carmen's lack of Social Security benefits due to her type of pension. The trial court concluded that it was fair and equitable to divide the community property portion of the pension 60 percent to Carmen and 40 percent to Peter.

On appeal, Peter Rockwell assigned error to the trial court's consideration of Carmen's Social Security benefits. Relying on *In re Marriage of Zahm*, Peter argued that the trial court could not value and consider Social Security benefits when distributing assets. The *Rockwell* court of appeals agreed that the trial court could not calculate a future value of those monies and award that value as a precise property offset as part of its property distribution. Nevertheless, the possibility that one or both parties may

8

receive Social Security benefits is a factor the court may consider in making its distribution of property. A trial court cannot properly evaluate the economic circumstances of the spouses unless it also considers the amount of Social Security benefits currently received. This court concluded that the trial court properly considered and compensated for the Social Security benefits that Carmen would have received, but for her federal pension.

*Rockwell* supports the argument that the trial court *could* have considered, when dividing the couple's assets, Brian Hamond's lack of participation in Social Security. Hamond's appeal, however, raises a different issue: *must* the trial court have deducted an amount from Hamond's LEOFF pension before awarding Abrams one-half of the pension balance?

*Rockwell* is factually analogous to the instant case, but Hamond misconstrues its holding. Hamond construes *Rockwell* to require every trial court to consider and compensate for each spouse's expected Social Security benefits in order to put her or him on equal footing prior to dividing property in dissolution. *Rockwell* imposes no such burden or uniformity upon Washington's trial courts. While the *Rockwell* court concluded "that the trial court properly considered and compensated for the Social Security benefits that Carmen would have received, but for her federal pension," that conclusion only acknowledged a lack of error. *Rockwell*, 141 Wn. App. at 245.

To support his reading of *Rockwell*, Hamond cites case law from Pennsylvania and Arizona—*Rimel v. Rimel*, 913 A.2d 289, 292 (Pa. Super. 2006) and *Kelly v. Kelly*, 198 Ariz. 307, 309, 9 P.3d 1046 (2000). In *Rimel*, the court held that "in order to equate the income that will be provided to the parties following divorce, [the] husband is entitled to a set-off against his CSRS pension." In *Kelly*, the court ruled that the Social Security portion of each retirement plan would be set aside as the respective spouse's separate property, whether equal or not, while the remaining benefits earned during marriage would be divided as community property by the trial court. The Arizona court explained that its resolution sought to place the parties in the position in which they would have been had both participated in Social Security.

Division Two of this court already considered the two foreign cases in *In re Marriage of Smith*, 158 Wn. App. 248, 260, 241 P.3d 449 (2010), noting "the holdings in *Rimel* and *Kelly* are not yet reflected in Washington law." In *Smith*, the court held that "[c]haracterizing pension received in lieu of Social Security as separate property is not mandatory in Washington, particularly where the parties never suggested that characterization." 158 Wn. App. at 260-61. Brian Hamond distinguishes *Smith* by arguing that he repeatedly requested such a characterization. But *Smith*'s admonishment against raising new arguments on appeal does not undermine its holding that backing out Social Security is not mandatory in Washington.

10

A significant distinction between *Rockwell* and the case at hand is that Carmen Rockwell submitted admissible evidence of the amount of Social Security she lost by reason of her employment pension. Brian Hamond never qualified his purported expert, Brian Gosline, and that expert never calculated Hamond's lost Social Security benefits. A witness must be qualified as an expert for the witness to provide opinion testimony. ER 702; *In re Detention of McGary*, 175 Wn. App. 328, 338, 306 P.3d 1005 (2013). The opinions of Gosline were not under oath but contained in a letter attached to Hamond's affidavit. Letters are inadmissible hearsay. *Davis v. Fred's Appliance, Inc.*, 171 Wn. App. 348, 358, 287 P.3d 51 (2012); *Patterson v. Kennewick Pub. Hosp. Dist. No. 1*, 57 Wn. App. 739, 744, 790 P.2d 195 (1990).

If Brian Hamond wanted the court to consider the amount of Social Security benefits lost by his participation in LEOFF, Hamond should have timely provided the court evidence of that amount. A party advocating a ruling from the court carries the burden of providing the evidence needed for the ruling. *Johnson v. Nasi*, 50 Wn.2d 87, 91, 309 P.2d 380 (1957); *State v. Anderson*, 72 Wn. App. 253, 260, 863 P.2d 1370 (1993); *Am. States Ins. Co. v. Breesnee*, 49 Wn. App. 642, 646, 745 P.2d 518 (1987). Hamond never asked for a delay in the hearing in order to obtain an opinion from Gosline.

Because he lacked evidence of the amount of his loss, Brian Hamond, in a motion for reconsideration, asked the court to deduct from his LEOFF account Patricia Abrams'

projected Social Security benefits. Nevertheless, a trial court may not calculate or value a party's expected future Social Security benefits and then award the other party a precise offset based on that amount. *Zahm*, 138 Wn.2d at 218. Moreover, that projection was inadmissible evidence, because it came from the unqualified expert witness.

The trial court has broad discretion in distributing the marital property, and its decision will be reversed only if there is a manifest abuse of discretion. *In re Marriage of Kraft*, 119 Wn.2d 438, 450, 832 P.2d 871 (1992); *In re Marriage of Griswold*, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002). A manifest abuse of discretion occurs when the discretion was exercised on untenable grounds. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). Based upon the evidence properly before the trial court, we find no abuse of discretion.

## THE TIME RULE METHOD

Brian Hammnd also contends the trial court abused its discretion by failing to use the "time rule" method when it divided his LEOFF pension as entirely community property. The time rule method is used to divide the community portion of a retirement account.

Washington courts have created unique rules for determining the character of pension rights as separate or community property. "The community share of a pension may include increased benefits attributable to salary increases following dissolution but not increases due to additional years of service." *In re Marriage of Harris*, 107 Wn. App.

12

597, 602, 27 P.3d 656 (citing *In re Marriage of Chavez*, 80 Wn. App. 432, 437-38, 909 P.2d 314 (1996)). "[T]he community share [of a pension] is calculated by dividing the number of years of marriage (prior to separation) by the total number of years of service for which pension rights were earned and multiplying the results by the monthly benefit *at retirement*. This is known as the 'time rule method.'" *Rockwell*, 141 Wn. App. at 251-52 (emphasis added); *see also Harris*, 107 Wn. App. at 602 (describing the time rule method as "the typical formula used.") Dividing the monthly benefit the pensioner receives once retired is an "as-received" award. Such "[a]n award of pension rights on an as-received basis is to be encouraged, because it avoids difficult valuation problems and shares in the risks inherent in deferred income." *Chavez*, 80 Wn. App. at 437. But as our Supreme Court noted, "There can be no set rule for determining every case and as in all other cases of property distribution, the trial court must exercise a wise and sound discretion." *In re Marriage of Wilder*, 85 Wn.2d 364, 369, 534 P.2d 1355 (1975), *quoted in In re Marriage of Harris*, 107 Wn. App. 597, 603, 27 P.3d 656 (2001).

We refuse to address Hamond's claimed error for two related reasons. First, Hamond did not ask the trial court to apply the time rule method. Second, Hamond invited any error.

If the trial court applied incorrect law, Hamond invited the error. In his declaration for trial, Hamond requested that "[u]pon completion of a determination by Brian Gosline of what portion of my LEOFF account equates to Social Security benefits,

13

I would ask that *the remainder be divided equally*." CP at 118 (emphasis added). Under the doctrine of invited error, a party may not materially contribute to an erroneous application of law at trial and then complain of it on appeal. *In re Dependency of K.R.*, 128 Wn.2d 129, 147, 904 P.2d 1132 (1995). Here, Hamond appeals the result he requested at trial. Gosline never provided the court a calculation.

This court ordinarily refuses to review a claim of error that was not raised in the trial court. RAP 2.5(a). Hamond made no mention of the time rule method at trial or in his motion for reconsideration.

## ATTORNEY FEES

Both parties requested attorney fees under RAP 18.1 and RCW 26.09.140. The latter reads:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.
> Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs.
> The court may order that the attorneys' fees be paid directly to the attorney who may enforce the order in his or her name.

"RCW 26.09.140 allows a court to award attorney's fees if a party demonstrates financial need." *In re Marriage of Konzen*, 103 Wn.2d 470, 478, 693 P.2d 97 (1985). An award

14

No. 31320-4-III
*Marriage of Hamond*

under RCW 26.09.140 is discretionary, not mandatory. *In re Marriage of Stachofsky*, 90 Wn. App. 135, 148, 951 P.2d 346 (1998). As of writing, neither party has demonstrated financial need on appeal. *In re Marriage of Coons*, 53 Wn. App. 721, 723, 770 P.2d 653 (1989). Nor has any party filed a financial affidavit. Therefore, we decline any award for fees.

## CONCLUSION

We affirm the trial court's division of property.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Brown, J.

Kulik, J.P.T.

15