IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 33878-9-III |
| SHARON TAYLOR, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| FRANK TAYLOR, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, C.J. — Sharon Radovich, formerly Sharon Taylor, appeals an order

clarifying the distribution of her former husband's retirement benefit. Frank Taylor and

she maintained their matrimony for thirteen years while he worked for the Douglas

County Public Utility District (PUD). Dissolution ended their union in 1985, but Taylor

continued to work at the PUD until 2014. The divorce decree awarded Radovich "[o]ne

half of Respondent's [Frank Taylor's] retirement benefits for 13 years." Clerk's Papers

(CP) at 13.

At Frank Taylor's request, the trial court granted Radovich payment for the rest of her life based on the monthly retirement benefit that Taylor would have garnered if he only worked thirteen years with the Douglas County PUD. Radovich sought distribution of half of the amount Frank Taylor receives from the Department of Retirement Systems (DRS) over thirteen years during the first thirteen years of Taylor's retirement. We disagree with both parties and award Radovich recovery based on Court of Appeals precedent. We divide the number thirteen by the number of years Taylor worked at the PUD, divide the remainder by two, and multiply that remainder by Taylor's monthly retirement benefits.

## FACTS

Sharon Radovich and Frank Taylor married on July 6, 1962. On November 2, 1970, Frank enrolled in the Public Employees Retirement System, Plan 1 (hereafter "PERS 1") through his work for Douglas County Public Utility District. While Frank still worked at the utility district, the Taylors separated on October 1, 1983.

On July 3, 1984, Sharon Radovich petitioned the superior court to dissolve the couple's irretrievably broken union. The petition, acknowledged by Taylor and Radovich, provided:

> We have agreed that our property will be divided as follows:
> 1. Home to Respondent [Frank Taylor], with a $11,250 lein [sic] to Petitioner [Sharon Radovich] which shall become due upon sale of said home or in 10 years, whichever occurs first.

2

>     2. Household goods of furniture, half to Respondent and half to Petitioner.
>     3. Retirement Benefits, Douglas County P.U.D. Half to Petitioner for 13 years after Respondent retires.

CP at 3. The Taylors did not enter a written separation agreement, and neither hired an attorney for the divorce.

The superior court entered a dissolution decree on May 21, 1985. The decree provided:

>     (7) PETITIONER'S PROPERTY. The following property is the sole and separate property of the Petitioner; (use legal descriptions for real estate).
>         1. 1978 Chevy Pickup
>         2. One half of Respondents retirement benefits for 13 years
>         3. One half of furniture and household goods.
>         4. $8,000 dollars, which is half of agreed upon equity in home at the time of separation. Respondent agrees to pay Petitioner this amount within ten years of separation, or upon sale of home. This property is legally described as follows Lot 24 S.E. Alta Lake Golf Course. 1981 Homette Mobil [sic] Home.
>
>     (8) RESPONDENT'S PROPERTY. The following property is the sole and separate property of the Respondent; (use legal descriptions for real estate).
>         1. 1981 Monte Carlo
>         2. One half of household furniture and goods.
>         3. All money from sale of home after $8,000 has been paid to petitioner.
>         4. Half of retirement benefits for 13 years and full amount after that period of time.

CP at 13. We do not know who drafted the language addressing the distribution of Frank Taylor's retirement benefits.

In 2014, Frank Taylor, when nearing retirement, requested that DRS calculate Sharon Radovich's portion of his retirement benefit as allocated by the dissolution decree. DRS responded by letter with the following computation:

### CONTRIBUTION INFORMATION

- Contributions earned as of 11/1/83                                 $22,364.57
- **Assets in account subject to a Property Division            $22,364.57**

### MONTHLY BENEFIT INFORMATION

The calculation of monthly retirement benefit is based on the retirement benefit earned only from 11/2/70 to 11/1/83 and assumes you terminated service at that time, leaving the account balance to accrue a future retirement benefit at age 60.

- Service credit earned from 11/2/70 to 11/1/83             156 months
- AFC earned from 11/1/81 to 10/31/83                          $3,024.20
- **Estimated benefit amount = 2% x 156 x $3,024.20 ÷ 12 = $788.40 per mo.**

CP at 70. AFC means average final compensation. We do not know why DRS gauged the benefit on the assumption Taylor would retire at age sixty. We do not know the source of the two percent figure, but assume that figure is standard in determining PERS 1 retirement benefits. We have performed the same calculation performed by DRS and arrive at $786.29, not $788.40.

Although not relevant to resolution of this appeal, the parties in their briefs mention the current value of half of Frank Taylor's contributions to PERS 1 through the date of separation. Half the contributions from the first 13 years equals $11,182.29.

4

Frank Taylor retired from the Douglas County Public Utility District on December 31, 2014, thirty-one years after the separation and divorce. PERS 1 commenced paying Taylor a gross monthly benefit of $6,743.42. DRS refused to issue retirement benefits to Sharon Radovich until DRS received a court order with language acceptable to it.

## PROCEDURE

On June 3, 2015, Sharon Radovich filed a motion for entry of an amended property division, under which she sought an award of retirement benefits. We consider her motion to seek clarification of the 1985 marriage dissolution decree. Radovich proposed that she receive half of Frank Taylor's monthly retirement benefits during the thirteen years following his retirement. She first calculated this amount at $4,081.98 per month. She later reduced the amount to $3,371.71 per month, one-half of Frank Taylor's gross monthly payment of $6,743.42. Sharon Radovich's calculation gives her the benefit of Taylor's higher average final compensation as the result of working an additional thirty-one years after the separation and divorce. Frank contested this amount and cross moved for a clarification of the award of retirement benefits. Frank proposed an order awarding Radovich an amount consistent with the DRS calculation. This amount is $394.20 per month.

The trial court conducted two hearings. At each hearing, the parties provided their respective proposed findings of fact and conclusions of law supported by affidavits in which each declared his or her intent when entering the divorce decree. After the second

No. 33878-9-III
*In re Marriage of Taylor*

hearing, the trial court adopted Frank Taylor's position that Sharon Radovich receive

$394.20 per month and entered findings of fact and conclusions of law consistent with

this ruling. The findings and conclusions included:

## FINDINGS OF FACT

FF-13. The number "13" [in terms of years] is used twice in the decree. The number "13" and the reference to it twice in the decree is important because it gives the Court a context, a basis for saying that there is no ambiguity. The number "13" and the reference to it twice is really helpful and a reason why the Court can say that the Decree is unambiguous on its face. The number reflects that Mr. Taylor worked for a state entity and contributed to the state retirement system for a period of 13 years while married to Ms. Radovich and before they separated.

FF-14B. The court is considering the four corners of the decree and is interpreting the same with consideration of parol or extrinsic evidence.

FF-15. Both parties made a conscious decision that the award would be based on Mr. Taylor's contributions of community property, his income, for 13 years that he was working and they further decided that, after they were divorced, any of his contributions to the retirement would be his. The references to 13 years are based on those contributions of marital income to Mr. Taylor's retirement account.

. . . .

FF-18. Contributions to the retirement account made after the parties separated were the separate property of Mr. Taylor not Ms. Radovich.

FF-19. Ms. Radovich waited 31 years for disbursement from Mr. Taylor's retirement account.

FF-20. The Department of Retirement Systems determined the value of the retirement account as of the date the parties separated and also at the date Mr. Taylor retired. The value of Ms. Radovich's portion of Mr. Taylor's account increased from the date of separation to the date of Mr. Taylor's retirement and such increase sufficiently compensated her for the payments delayed for 31 years.

FF-21. To distribute one half of the total monthly benefits at the time of retirement to Ms. Radovich would result in a significantly

6

disproportionate distribution, which would not be a fair and equitable distribution of assets.

FF-22. There is no ambiguity with regard to what the language in the decree indicates. There is room for interpretation, but there is no ambiguity.

. . . .

CONCLUSIONS OF LAW

. . . .

CL-1. The parties' assets and obligations must be distributed in a fair and equitable manner.

CL-2. The award of retirement benefits in the decree of dissolution is not ambiguous. The award of the retirement benefits is a property settlement provision not subject to modification.

CL-3. The Court is interpreting the decree as written and signed 30 years ago.

CL-4. The Court need not go beyond the four corners of the decree to interpret its meaning.

. . . .

CL-5. The intent of the parties was that they made a conscious decision to base Ms. Radovich's award on Mr. Taylor's contributions of community property, his income for the 13 years that he was working and married to Ms. Taylor (now Radovich).

CL-6. The parties decided that any contributions Mr. Taylor made after they were separated would be his separate property and the court so concludes.

CL-7. The sums Mr. Taylor contributed to the retirement account from the time of separation to the time of Mr. Taylor's retirement are the separate property of Mr. Taylor, and Ms. Radovich has no interest in those sums.

NOTE: There is no CL-8.

CL-9A. Compensation for the increase in value of the retirement benefits over the 30 years since the decree is captured in the increased value of the monthly payments calculated by DRS and comports with the ruling in In re the Marriage of Moore, 99 Wn. App. 144, 993 P.2d 271 (Div. 3, 1999).

CL-9B. The basis of Ms. Radovich's property right to part of Mr. Taylor's retirement account is: her separate property and all of the interest that accrued on her separate property interest in Mr. Taylor's retirement

7

account. This comports with the ruling in In re the Marriage of Moore, 99 Wn. App. 144, 993 P.2d 271 (Div. 3, 1999).

CL-10. Ms. Radovich is entitled to, for a period of the rest of her life, one half of the benefits that result from contributions made from the marital community of Sharon Taylor and Frank Taylor during the 13 years that Mr. Taylor worked for the State of Washington entity to the Department of Retirement Systems, that resulted from the contributions made from the marital community of the Taylors.

CL-11. The distribution of retirement funds is fair and equitable.

CP at 201-04.

## LAW AND ANALYSIS

Sharon Radovich appeals the trial court's decision and contends the trial court erred by adopting Frank Taylor's proposed order regarding distribution of Taylor's retirement benefits. She argues the trial court improperly considered the decree's effect, incorrectly interpreted Taylor and Radovich's divorce decree, and ignored dispositive case law supporting her proposed order. Taylor responds that the trial court did not abuse its discretion when considering extrinsic evidence to interpret the unambiguous divorce decree. According to Taylor, the trial court properly found all pension contributions he made after separation to be his separate property.

Sharon Radovich and Frank Taylor asked the trial court to interpret a decades old dissolution decree. If a decree is ambiguous, a party may bring a declaratory judgment action to determine the parties' rights and liabilities. *In re Marriage of Chavez*, 80 Wn. App. 432, 435, 909 P.2d 314 (1996). When a judgment is ambiguous, a reviewing court seeks to ascertain the intention of the court entering the original decree by using general

8

rules of construction applicable to statutes, contracts and other writings. *In re Marriage of Gimlett*, 95 Wn.2d 699, 704-05, 629 P.2d 450 (1981). Normally, the court is limited to examining the provisions of the decree to resolve issues concerning its intended effect. *In re Marriage of Gimlett*, 95 Wn.2d at 705.

According to the Washington Supreme Court, the clarification of a decree entails a question of law that an appeals court reviews de novo. *State v. Campbell*, 125 Wn.2d 797, 800, 888 P.2d 1185 (1995). Nevertheless, according to this court in *In re Marriage of Moore*, 99 Wn. App. 144, 146, 993 P.2d 271 (1999), we review a declaratory order clarifying a property division for abuse of discretion. We determine de novo review to control, since Supreme Court precedent supplants Court of Appeals rulings. Also, even under Court of Appeals jurisprudence, since clarification amounts to a question of law, de novo review prevails. *Stone v. Southwest Suburban Sewer District*, 116 Wn. App. 434, 438, 65 P.3d 1230 (2003); *Case v. Dundom*, 115 Wn. App. 199, 201, 58 P.3d 919 (2002). In *In re Marriage of Chavez*, 80 Wn. App. at 435, this court reviewed de novo a trial court's decision clarifying pension award language in a dissolution decree. Because of the legal nature of the issue on appeal, we do not address the validity of the trial court's findings of fact and conclusions of law.

The trial court ruled that the decree contained no ambiguity, but then, in part, relied on testimony as to the parties' intent when entering the decree. This ruling ignores the principles that the court only looks to the words in the decree to discern the earlier

9

court's intent, not the parties' intent. We do not know if the trial court would have ruled differently if the court followed the intent of the 1985 court rather than the parties. We recognize that the court entering the decree likely perfunctorily signed the decree without considering the import of its terms, since the parties drafted and agreed to the decree's language. Nevertheless, the law directs us to seek the court's intent. Therefore, we do not consider the declarations of Frank Taylor and Sharon Radovich.

The 1985 divorce decree granted Sharon Radovich "one half of Respondent's retirement benefits for 13 years." CP at 13. In turn the decree awarded Frank Taylor "half of retirement benefits for 13 years and full amount after that period of time." CP at 13. The decree does not indicate on what date those retirement benefits are calculated. The decree does not state whether Sharon Radovich receives payments over thirteen years or whether the parties use the number thirteen as a factor in the calculation of the monthly benefits for the rest of Radovich's life. We discern three possible readings of the decree:

1. Sharon Radovich receives one-half of the amount Frank Taylor receives from DRS over thirteen years, presumably during the first thirteen years of retirement. Under this reading, Radovich receives $3,371.71 per month for thirteen years after Taylor's retirement.

2. We determine the monthly amount that Frank Taylor would have garnered if he only worked thirteen years with the Douglas County PUD. We then distribute half of that

10

amount to Sharon Radovich each month. Under this interpretation, Radovich receives $394.20 per month for the rest of her life.

3. We engage in this calculation: divide the number thirteen by the number of years Taylor worked at the PUD. Divide the remainder by half and then give that percentage of Frank Taylor's payments to Sharon Radovich. The calculation follows: $13/44 \times 1/2 = 13/88 = 14.77\%$ of monthly amount of $6,743.42 = $996.19. Under this reading, Radovich receives $996.19 each month for the rest of her life.

Sharon Radovich seeks an award consistent with the first calculation. Her interpretation would reform the language to read "for 13 years after Taylor retires, Radovich receives one half of his retirement benefits." Frank Taylor seeks an award consistent with the second computation, and the trial court agreed. Taylor asks that we insert language so it reads "one half of Taylor's retirement benefit contributions made during the last 13 years of marriage." Based on precedent, we adopt the third calculation.

Pension and other retirement plans are deferred compensation and as such they are not mere expectancies but vested rights possessed by employees. *Farver v. Department of Retirement Systems*, 97 Wn.2d 344, 346, 644 P.2d 1149 (1982). A fundamental principle of community property law declares that, since both spouses participate in the community, both are entitled to share in its reward. *Farver v Department of Retirement Systems*, 97 Wn.2d at 346. Pension rights, as deferred compensation, constitute property rights subject to division by the court. *In re Marriage of Chavez*, 80 Wn. App. at 436

11

(1996).

The method used by courts to calculate the community share of a pension is by dividing the number of months of marriage by the total months of service and multiplying that by the monthly benefit at retirement. *In re Marriage of Chavez*, 80 Wn. App. at 436 (1996); *In re Marriage of Bulicek*, 59 Wn. App. 630, 639, 800 P.2d 394 (1990); *In re Marriage of Pea*, 17 Wn. App. 728, 731, 566 P.2d 212 (1977). This calculation establishes the community portion of the total pension credits earned by the retiree. *In re Marriage of Chavez*, 80 Wn. App. at 436. The court then divides the figure in two to finalize the amount awarded to the other spouse.

Frank Taylor's method of calculation fails to note that his higher average financial compensation at the time of retirement resulted in part because of his labor during the marriage. *In re Marriage of Bulicek*, 59 Wn. App. at 638; *In re Marriage of Pea*, 17 Wn. App. at 731; *In re Marriage of Chavez*, 80 Wn. App. at 437. The fact that a retiree's final pension is calculated on a salary that is unknown at the time the income is deferred is a normal and anticipated feature of a deferred compensation program. *In re Marriage of Chavez*, 80 Wn. App. at 437. The nonpensioner's pension share should be based on the pensioner's salary at the time of his retirement. *In re Marriage of Chavez*, 80 Wn. App. at 437.

The trial court principally relied on *In re Marriage of Moore*, 99 Wn. App. 144, 993 P.2d 271 (1999). The question on appeal in *Moore* was whether the wife's award of

half of the community interest in a pension to be disbursed in the future created a property interest or a lien against the pension. We concluded that the award created a property interest such that the recipient was entitled to the disbursement value of her share at the time of distribution rather than its value at the time of the decree. We determine *Moore* to be consistent with *In re Marriage of Pea, In re Marriage of Bulicek, In re Marriage of Chavez*, and our ruling today.

## Attorney Fees

Each party seeks an award of reasonable attorney fees and costs on appeal. Under RAP 18.1(a), this court may award a party recovery of reasonable attorney fees or expenses on review if applicable law grants a party such right. RCW 26.09.140 allows the court to order a party to pay for the cost of maintaining the appeal and attorney fees in addition to statutory costs. The primary considerations in a fee award in dissolution actions are need and ability to pay as well as the general equity of the fee given disposition of the marital property. *In re Marriage of Davison*, 112 Wn. App. 251, 259, 48 P.3d 358 (2002).

RAP 18.1(c) declares:

> **Affidavit of Financial Need.** In any action where applicable law mandates consideration of the financial resources of one or more parties regarding an award of attorney fees and expenses, each party must serve upon the other and file a financial affidavit no later than 10 days prior to the date the case is set for oral argument or consideration on the merits.

13

No. 33878-9-III
*In re Marriage of Taylor*

Neither party has filed a financial affidavit in compliance with RAP 18.1(c). Therefore, we deny each party an award. Since both parties prevail in part on appeal, we also deny costs to each party.

## CONCLUSION

We remand to the trial court to enter an order directing payment to Sharon Radovich, from Frank Taylor's DRS retirement benefits, in the amount of $996.19 each month for the rest of her life.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

I CONCUR:

_____
Korsmo, J.

14

No. 33878-9-III

SIDDOWAY, J. (dissenting) — The majority opinion identifies three possible constructions of the pension division provisions of the parties' 1985 divorce decree and adopts the construction that neither party advanced, and that reflects an approach that (while now favored) was not embraced in a reported Washington decision until 1990— five years after the decree we are construing. I would affirm the trial court, which adopted a construction that was advanced by a party and is consistent with the law in 1985.

Two provisions of the parties' petition for divorce and decree are key. Section VI(b) of the petition states:

We have agreed that our property will be divided as follows:
. . . .
3. Retirement Benefits, Douglas County [Public Utility District (PUD)]. Half to Petitioner for 13 years after Respondent retires.

Clerk's Papers (CP) at 3. Sections 7 and 8 of the decree state:

(7)    [WIFE'S] PROPERTY. The following property is the sole and separate property of the [Wife]. . . .
. . . .
2. One half of Respondents retirement benefits for 13 years . . . .
(8)    [HUSBAND'S] PROPERTY. The following property is the sole and separate property of the [Husband].
. . . .
4. Half of retirement benefits for 13 years and full amount after that period of time.

CP at 13.

1

Mr. Taylor retired effective December 31, 2014. Although I did not find his retirement age in our record, we do know that Mr. Taylor and Ms. Radovich were married in July 1962, meaning that if he was 18 years old when he married, he retired at age 70. It is a reasonable inference that he retired at or near age 70.

Ms. Radovich took the position that the import of the decree was that she was entitled to receive one-half of Mr. Taylor's $6,743.42 gross monthly retirement benefit for 13 years, and only after that would he receive his full retirement benefit. While that construction is literally consistent with the decree's language, it defies common sense. As the trial court found, "13" is understandable as a factor in determining the *portion* of Mr. Taylor's retirement benefit to which Ms. Radovich is entitled, since it is the number of years of the marriage during which contributions were made to the Public Employee's Retirement System, Plan 1 (PERS 1). It is completely arbitrary as a basis for how long she should receive half of his benefit after retirement, however. And based on Mr. Taylor's reasonable life expectancy, it would mean that although it could be decades after the separation and divorce before he took retirement (it turned out to be 31 years), he would have to afford her a full half of his retirement benefit for what could easily be most of his retired years. The trial court reasonably rejected Ms. Radovich's construction of the decree.

Mr. Taylor took the position that the decree created a separate property interest in Ms. Radovich in one-half the value of his retirement benefits as of the time of

2

dissolution; in other words, the 13 years' worth of benefits earned at that time. He argued

that this was an acceptable method of allocating retirement benefits as of 1985, as

reflected in this court's decision in *In re Marriage of Moore*, 99 Wn. App. 144, 993 P.2d

271 (1999).

*Moore* was a 1999 decision but it dealt with a 1984 divorce decree that gave a wife

an interest in her husband's pension, then valued at $42,781.48. It awarded her "half the

community interest in the pension," requiring that she "'receive this portion of the

pension' at such time as it is being distributed." *Id.* at 145-46. Thirteen years later, when

the husband was ready to retire, he offered her $21,390.74, which was one-half the

pension's value at the time of the divorce. This court described what had been awarded

as follows:

> [The court] awarded [the wife] an interest in the pension
> corresponding to half the community interest in the pension's *then present
> value*. [The wife's] interest in the future retirement benefits became her
> separate property upon entry of the decree. . . . *The increase in value after
> dissolution, therefore, belongs to [the wife], absent a contrary expression in
> the decree.*

*Id.* at 147 (emphasis added) (citations omitted).

Mr. Taylor provided the court with a letter from the Washington State Department

of Retirement Systems (DRS) that performed the type of analysis contemplated by

3

*Moore.*[1] It calculated that if Mr. Taylor had left the PUD's employ at the time of the parties' dissolution in 1985, the monthly benefit he had earned and would receive at age 60 based on his average final compensation and months of service was $788.40. From that, he argued that Ms. Radovich's one-half would be $394.20. He also argued that she received the benefit of growth, as in *Moore*, because her share of his accumulated contributions, which had been $11,182.29 at the time of the divorce, had grown to $60,807.74. Since he had already retired before she sought an order addressing her share of the retirement benefit, DRS informed her that she could no longer elect distribution of the $60,807.74. But it did say that her share of the contribution amount, with earnings, could be available if Mr. Taylor passed away before the accumulated contributions were depleted.

The method of calculating a nonemployee spouse's share of a retirement benefit discussed in *Moore* and calculated for Mr. Taylor by DRS is no longer the favored approach in Washington. In 1990, in the case of *In re Marriage of Bulicek*, 59 Wn. App. 630, 800 P.2d 394, this court approved what Washington cases now refer to as the "time rule" method of dividing pensions in dissolutions. *In re Marriage of Rockwell*, 141 Wn. App. 235, 252, 170 P.3d 572 (2007). Other authorities refer to it as the "marital

---

[1] I would be more comfortable relying on the law and regulations applicable to PERS 1 retirement benefits in 1985 than on the e-mails and correspondence available in our record. I will nonetheless rely on the authority and information provided to the trial court.

foundation" approach. *See* BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY §

6.26, at 166-83 (3d ed. 2005). It is simple to calculate, being equal to a "coverture

fraction" (creditable time during marriage ÷ total creditable time) multiplied by the entire

benefit the employee ultimately receives. *Id.* at 167.

I disagree with the implication of the majority opinion that the time rule approach

was recognized in Washington in 1977, in *In re Marriage of Pea*, 17 Wn. App. 728, 566

P.2d 212. As *Bulicek* itself observes (and criticizes), *Pea* expressed a preference for

dividing a pension based on its present value where present value information was

available.[2] The formula the *Pea* court applied for calculating the wife's share might look

time-rule-like because it multiplies two numbers, one being the coverture factor. But

while the multiplier is the same, the multiplicand is not. In *Pea*, the husband was 37 and

might not retire for many years. But he would not qualify at all for the military pension

at issue until 2 years from the time of trial—not until October 1978. Since it was

impossible to calculate a dissolution-date value for a pension to which he was not yet

entitled, the court used the earliest possible date—October 1978—and multiplied the

coverture factor by the benefit he could draw *at that time*. It did not, as the time rule

method would, provide that the coverture factor would be applied to the much larger

---

[2] "Appellant argues that [*Pea*] requires a trial court to determine present value of future pension benefits where there is evidence to support such a determination, and prohibits use of a percentage allocation of future benefits on an as-received basis. We reject that analysis." *Bulicek*, 59 Wn. App. at 639.

benefit he might draw if he retired many years later.[3] The approach of *Pea* is like the

approach in *Moore*—the only difference is that the husband's ineligibility for the pension

required the court to rely on a calculation 2 years out.

It may be tempting to give Ms. Radovich the benefit of more current case law that

better addresses how to equitably divide a pension. And I say to Mr. Taylor that the

benefit allocation ordered by the majority is the allocation presently viewed by

Washington courts as most fair. But I believe the trial court was truer to the legal

question presented: what is a reasonable construction of the decree, considering the date

on which it was entered. Based on the legal authority and arguments presented by the

parties, I believe the trial court correctly rejected Ms. Radovich's position and accepted

Mr. Taylor's. For that reason, I dissent.

_____
Siddoway, J.

---

[3] The court stated she would be entitled to cost-of-living increases that might apply thereafter, but not to increases attributable to the husband's service beyond the 1978 earliest-retirement date. *Pea*, 17 Wn. App. at 732.